LOIS TOLIVER, ADMINISTRATRIX, APPELLEE, v. AXEL ROSTIN, APPELLANT.

FILED OCTOBER 24, 1930. No. 27310.

 

*Kennedy, Holland, DeLacy & McLaughlin,* for appellant.

*Crofoot, Fraser, Connolly & Stryker* and *James T. English, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

GOSS, C. J.

Plaintiff recovered a judgment for damages against the defendant for negligence in driving a car while intoxicated and thus causing the death of her intestate who was her husband and alleged to be a guest of the defendant. Defendant appealed.

Toliver and Rostin lived in Omaha and had been friends for years. Toliver was a barber and Rostin, who had been a barber, was engaged in the hail insurance business, which gave him considerable leisure time. On Tuesday, January 22, 1929, they went out to a place on the Platte river, 20 miles or more from Omaha, ostensibly to hunt, but apparently for such recreation and pleasure as they might derive from being in a hunting lodge or camp and from drinking intoxicating liquor. They used no guns and did not even take their guns out of the cases, but drank liquor fairly constantly while there. They went in Rostin's car and returned in the same car to the place where on the journey home the death of Toliver occurred. They remained at the shack until late Thursday afternoon, January 24, when they started home, Rostin driving. It was cold weather, below zero. There is evidence from which a jury might infer that they were not then so intoxicated that Rostin could not drive with ordinary care. He drove away from the camp through a gate and along a country

road for several miles, without mishap, to the Center street pavement, according to Rostin's testimony. He testified that, when they arrived at the paved road, Toliver said his feet were cold and he wanted to put on a pair of overshoes Rostin had in the back of the car; that Toliver sat on the running board and put on the overshoes and Rostin put a hunting coat over his leather coat; that while stopped at this point they "took a couple of drinks;" that Toliver said he would drive and drove from that point; that Rostin sat on the right side of Toliver "and he seemed to be getting along all right, kept in the road all right and the roads weren't slick, and, of course, I was pretty much under the influence of liquor, and we kept talking, and he was getting along all right and was going down hill, and the last I remember was when he hit the rail of the bridge, and I don't remember anything—of course, my head was cut above the temple, ribs fractured, and the last I remember is when I was up on the pavement flagging a truck, and the truck driver had his lights on, and stopped and come down and I asked for help, and I don't remember a thing, when the doctor examined me or anything, until the next morning I woke up at Elkhorn."

Whoever drove the car after they reached the pavement, it went several miles east on the pavement without disaster, but when it reached a bridge over a creek it crashed through the iron wing running at an angle of about 40 degrees from the main bridge rail on the south side and the car went down about 20 or 25 feet from the road level to the creek. It came to rest on its left side with the car pointing north. Toliver was later taken out alive but unconscious. He was sent in an ambulance to an Omaha hospital where he died that same night.

It appears that one Peterson was the truck driver who was flagged by Rostin at the bridge; and that before taking Rostin for help he changed Toliver's position in the car. Peterson was not produced at the trial nor was his evidence taken. The car was a coach or two door car and the front seats were said to be movable. From the position of Toliver when the testifying witnesses found him it might have led

to the inference that he was driving the car; but that was not a necessary conclusion in view of the distance the car went after it left the pavement, in view of the suggestion that Peterson moved him and lack of knowledge of how he found him, in view of the fact that he was badly hurt and could not get out of the car, and in view of the fact that Rostin does not know how he himself got out. Rostin might have been thrown out of the driver's seat, he might have crawled out of the right-hand door or through its window, which was broken, after the car came to rest.

We have sketched the facts at some length because appellant's first assignment of error is that the court should have sustained his motion for a directed verdict for insufficiency of the evidence. The proximate cause of the accident, as alleged in the petition and as the court instructed the jury, was restricted definitely and solely to the intoxication of Rostin while driving his car with Toliver as his guest at the time Toliver was injured. There was evidence that he invited Toliver to go, that he furnished the car, the gas and a new battery to supplant the old one that froze up in camp, and that he drove the car all the time according to his own testimony, except after they reached the pavement on the return journey. He himself testified that he "was pretty much under the influence of liquor;" so if Rostin was driving, as we think the jury had a right to find, though contrary to his testimony, then his confessed intoxication may have furnished the proximate cause of the injury. The testimony warranted the submission of the issue as to whether Toliver was Rostin's guest with Rostin driving the car when the car went through the bridge, and therefore the court could not say as a matter of law that there was no evidence upon which to submit this issue; and to direct a verdict on the ground that they were engaged in a joint enterprise would, in the face of the evidence, usurp the functions of the jury. That was an issuable fact and so a question for the jury. *Judge v. Wallen,* 98 Neb. 154. Whether defendant was so intoxicated as to subject Toliver to contributory negligence sufficient to defeat a cause of action was another question for the jury which we think

the court was justified in submitting to the jury. On the whole we find no error in the refusal of the court to sustain defendant's motion for a directed verdict.

A more serious question is presented by the second assignment charging error in the giving by the court of instruction No. 16, as follows:

"However, if you believe from the evidence that Toliver knew that Rostin had been drinking intoxicating liquor and was to some degree intoxicated when they left the hunting shack, but that said defendant Rostin took charge of his automobile at the beginning of the return journey, and operated the same in a careful and prudent manner for several miles, then and in that event the deceased was not guilty of contributory negligence in remaining in the automobile and his knowledge of Rostin's condition will not bar a recovery on the part of the plaintiff."

Instructions Nos. 9 to 15 given by the court had been requested by defendant. The court had appended to instruction No. 9 these words: "This instruction and the six following instructions are to be considered in connection with instruction No. 16." The seven instructions stated propositions of law based on finding of fact under which, if found by the jury, plaintiff could not recover. The court evidently intended instruction No. 16 given by himself on his own motion to present the other side of the shield and to be a sort of buffer or cushion for the seven instructions preceding it. But we think the court inadvertently overlooked a portion of the evidence, to wit, that, after Rostin had driven "several miles" and no accident had happened by reason of Rostin's intoxication as driver, they stopped to put on the overshoes and coat and then drank some more, after which, while he testified he was not driving, Rostin further testified he "was pretty much under the influence of liquor." By this instruction the court told the jury as a matter of law that, if they found the facts stated in the instruction, but incompletely stated by the court under the evidence as we have shown, then in that event Toliver was not guilty of contributory negligence. Moreover, the instruction conflicts with the portion of instruction No. 11, given by the

court, as follows: "Or if you find that in the course of the return journey, defendant became so intoxicated as to be incapable of properly operating the car, and that Toliver knew it, or ought to have known it, and yet voluntarily continued on as a passenger in the car, then you are instructed that plaintiff cannot recover in this case."

It was, if anything, more important to submit to the jury the question of Toliver's contributory negligence after they entered upon the pavement than during the several miles they had traveled before arriving at the paved road. It was a question of fact for the jury to determine without the court taking from the jury as a matter of law the effect, on the issue of contributory negligence of Toliver, of the evidence of the drinking when they stopped at the pavement and of the driving and condition of Rostin during the last several miles, if they found he drove the car then. This error in instruction No. 16 was not cured by instruction No. 11, which refers to the whole of the return journey, because the two instructions were conflicting. We have said: "Where two conflicting instructions are given on a question, one containing an incorrect, and the other a correct, statement of the law, the latter will not cure the former." *Koehn v. City of Hastings*, 114 Neb. 106. We are of the opinion that this error requires a reversal of the judgment.

One of the pivotal issues of fact was whether Rostin was driving the car, as plaintiff alleged, or whether Toliver was driving, as Rostin testified. On that issue Mrs. Toliver and various acquaintances testified that they never knew him to drive. Dennis Ryan, a reputable witness and long time friend of Toliver, testified along this line and detailed a circumstance indicating that if Toliver had been able to drive he would have done so. He was then asked this question: "What was the fact as to whether or not it was generally known among his friends and acquaintances, as to whether or not Toliver knew how to drive a car?" Over objection he answered: "Well, it was generally known amongst his friends, and everybody that knew him, that he didn't know how to drive a car." A motion to strike the answer as hearsay was overruled, the court saying: "Oh, I think a man

associated with him for years could testify to that. The answer may stand."

It seems to us that the trial court misunderstood the meaning and effect of the question and answer. The witness had already testified to his own knowledge as to Toliver driving a car, but here he was permitted to give, not only his own conclusion as to whether Toliver could drive, but to state the general knowledge of "everybody that knew him" that he did not know how to drive a car. There was no opportunity to cross-examine everybody who knew Toliver and their evidence thus permitted to be given by this witness was purely hearsay or reputation.

Reputation is not a fact, but is hearsay. 3 Wigmore, Evidence (2d ed.) sec. 1609. Unless it is received under the exceptions permitting hearsay evidence it is of course inadmissible. We are not advised in what way this inquiry comes under any exception. Whether or not Toliver could drive was a current fact. Defendant produced one witness beside himself who testified that Toliver had driven a car and they submitted themselves to cross-examination. Plaintiff proved, as heretofore stated, by various witnesses who knew him intimately that they never knew him to drive a car. It was a question for the jury to pass upon, uninfluenced by hearsay evidence. While this hearsay evidence was, in a sense, cumulative, as argued by the plaintiff, yet we cannot agree with plaintiff's argument that it might not have been prejudicial. On another trial it should not be admitted.

Appellant argues that instruction No. 4, given by the court, containing the general propositions required to be found by the jury to be established by the plaintiff by a preponderance of the evidence, is erroneous because it fails to be coupled with an instruction as to contributory negligence. He cites *Bauer & Johnson Co. v. National Roofing Co.*, 107 Neb. 831. In that case no complete instruction on comparative negligence was given. It is true that the second paragraph of the syllabus suggests, in effect, that when the contributory negligence of the plaintiff may be a defense it should be submitted to the jury "in the same in-

struction" as that reciting the elements required to be proved by a preponderance of the evidence. It would have been better had the writer said "in the same instructions," for that is now the effect of our holdings. *Cornforth v. Graham Ice Cream Co.*, 109 Neb. 426. In the latter case the court referred to *Bauer & Johnson Co. v. National Roofing Co.*, *supra*, and held that it was not controlling of the case under consideration because of difference in facts and instructions. In commenting on a situation much like that here the opinion in the *Cornforth* case says: "It would have been better to qualify it by the further statement, 'subject, however, to the defense of contributory negligence, which is hereinafter explained,' or other language conveying the same idea, but to omit this is not reversible error." So we conclude that the general instruction on the elements to be proved by a preponderance of the evidence was not erroneous where later in the instructions an admittedly correct instruction on comparative negligence was given.

For the reasons stated, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.