RUEL MICK, APPELLEE, V. EDWARD OBERLE, APPELLANT.

FILED FEBRUARY 24, 1933. No. 28355.

*Good, Good & Kirkpatrick*, for appellant.

*George A. Adams, Herman Ginsburg* and *Joseph Ginsburg, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and RAPER, District Judge.

GOSS, C. J.

Defendant appeals from a judgment against him for damages arising out of an automobile accident. The main issues relate to the respective negligence of the parties and to the question of joint enterprise.

The accident occurred early Sunday morning, July 20, 1930. Saturday evening, July 19, plaintiff drove up town in the village of Eagle, intending to drive his car to Lincoln. There he invited defendant to go with him. Defendant said his car was a little better, was filled with gas, he intended to go to Lincoln anyway, and plaintiff could just as well ride along with him. Plaintiff accepted. Defendant drove the car to Lincoln, where plaintiff went to a dance and defendant went to a show. They met at the car about midnight and defendant drove it to a

restaurant, where they ate. Defendant requested plaintiff to drive to Eagle, as he was tired. Plaintiff drove, with defendant sitting at his right. As they neared a culvert or bridge about a mile and a half west of Eagle on the road then surfaced with gravel, one of the rear tires blew out. This caused the car to swerve to the left. Plaintiff testified he took his foot off the gas pedal and did not apply the brakes; said he saw the culvert with its guard post on the north side of the road, but saw the ditch on that side was shallow with a rather level slope beyond and was headed for it; but that, about 20 feet before they reached the culvert, defendant took hold of the steering wheel and pulled it over to the right, causing the car to skid and strike the post. The left side of the car struck the post, severely injuring plaintiff and rendering him unconscious. Defendant estimated the blowout occurred about 100 yards west of the culvert, and testified that the car zigzagged first to the northeast, then to the southeast, and the next time it hit the bridge; when he took hold of the wheel the car was going northeast and he tried to keep it in the middle of the road.

The court told the jury there had been some statements in the case in reference to the parties being engaged in a joint enterprise, but instructed the jury that, as a matter of law, plaintiff and defendant were not engaged in a joint enterprise. The court refused an instruction requested by defendant submitting that question to the jury. Defendant claims the question of joint enterprise is a question of fact for the jury, citing only *Judge v. Wallen,* 98 Neb. 154; *Toliver v. Rostin,* 120 Neb. 363; *Dow v. Legg,* 120 Neb. 271. In the *Judge* case it was held: "Whether a person riding in the automobile of another is engaged in a common enterprise with the latter is a question for the jury, where it is an issuable fact in the case." In that case there was ample evidence to support a conclusion that the two occupants of the automobile negligently operated were engaged in a joint enterprise. They were traveling salesmen, covering about the same

territory for different wholesale houses. One owned and operated the car, the other contributed sums about equal to the cost of the oil and gas consumed. For their mutual benefit they were engaged in the joint enterprise of transporting themselves over the territory canvassed by both. In the *Toliver* case the defendant complained that the jury were not peremptorily instructed in his favor, on the ground that he and plaintiff were engaged in a joint enterprise, where the evidence showed a clear issue of fact on that point. Consequently it had to be submitted to the jury. In the *Dow* case the assignment of error as to the joint enterprise was discussed, but was not decided, because the judgment was reversed on another fundamental ground.

20 R. C. L. 149, sec. 122, says: "If two or more persons unite in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect to the control of the means or agencies employed to execute such common purpose, the negligence of one in the management thereof will be imputed to the others." Citing *Koplitz v. City of St. Paul*, 86 Minn. 373 (which was also cited and quoted in *Judge v. Wallen*, 98 Neb. 154, 157). Continuing, 20 R. C. L. 149, sec. 122, says: "Accordingly it has been held that, where two persons are engaged in a joint enterprise in operating an automobile, the contributory negligence of one will bar a recovery by either, if it is a matter within the scope of the joint agreement." Citing *Beaucage v. Mercer*, 206 Mass. 492.

It is on the asserted fact that the parties hereto were engaged in a joint enterprise and upon the foregoing authority the defendant bases this assignment of error. Plaintiff was invited by defendant to ride from Eagle to Lincoln and back. The defendant furnished transportation in his car. The record is silent as to the expense. Each had his own purposes to serve by a visit to Lincoln. So far as the record shows, they had no common purpose to serve at Lincoln, or on the way. "Parties cannot be

said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects and purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto." *Jessup v. Davis*, 115 Neb. 1. See, also, *Yost v. Nelson, ante*, p. 33, as to facts negativing the conclusion of a joint enterprise.

As we find the facts presented on this trial, the plaintiff was a guest of defendant, gratuitously transported, had no community of interest in the objects of the trip to Lincoln and was in no sense a confederate or party to a joint enterprise. There was no evidence upon which the court might properly submit to the jury defendant's theory or claim of joint enterprise, and we find no prejudicial error in his refusal to submit it, nor in his instruction to the jury that the parties were not engaged in such an enterprise.

The court's instruction on the measure of damages authorized the jury to "consider such mental and bodily injuries as are shown in the evidence and the extent and duration of those injuries." Error is assigned as to the element of mental injuries. We find no evidence, nor is any pointed out to us, that the plaintiff suffered any mental injuries. "Instructions should not submit to the jury elements of damages not embraced within the evidence adduced on the trial." *Shiverick & Co. v. Gunning Co.*, 59 Neb. 73. The same instruction authorized the jury to consider plaintiff's "loss of time or earning capacity." While the evidence shows that plaintiff received a grievous injury and was totally disabled for a considerable time and partially disabled thereafter, yet the evidence is scanty as to the earning capacity of the plaintiff and as to the value of his lost time. The plaintiff testified that ordinarily he used to pick as high as 108 bushels of corn a day, yet after the injury and before the trial he worked on a farm three weeks and was able to pick 50 to 52 bushels a day. Whether he picked corn all the time while there is not clear. Corn picking seems to be valued in

his testimony at three cents a bushel. He testified the only work he has been able to do is this corn picking in November, 1930, and shocking wheat and running the binder in the summer of 1930. The only evidence of value of his time we find (and it is the duty of parties in a law case to point out the evidence relied on) is shown above.

"In an action for personal injuries, it is error to submit to the jury the question of damages for loss of time, when there is no evidence of the value of the time lost. The value of such lost time must be proved by what wages the plaintiff usually and ordinarily received, and not by what he received in an isolated instance." *Carlile v. Bentley*, 81 Neb. 715.

We think the indefiniteness of the evidence and of the instruction as to the value of the loss of time or earning capacity erroneously invited the jury into the realm of speculation on these particular elements. The instruction on the measure of damages, after stating the element of damages, closed with the words "and your verdict will be the aggregate sum of all such damages." Just how much of the gross verdict, if any, is attributable to the erroneously included elements relating to mental injuries, of which there was no evidence, to loss of time and to loss of earning capacity, as to which evidence of value is wanting, we are unable to say. The jury may have logically and legally eliminated everything not shown in the evidence. On the other hand, they may have based the verdict upon their own views of the value of all lost time and of earning capacity and upon their own conception of the damages arising from unproved mental injuries, when the evidence itself, upon which a verdict should be grounded, was wanting.

We have discussed the major errors assigned. For the reasons stated, the judgment of the district court is reversed and the cause remanded.

REVERSED.