24

CARRIE VAN AUKER, ADMINISTRATRIX, APPELLEE, V.
STECKLEY'S HYBRID SEED CORN COMPANY ET AL.,
APPELLANTS.
8 N. W. (2d) 451

FILED MARCH 5, 1943. No. 31504.

*Walter, Flory & Schmid,* for appellant.

*Fay H. Pollock* and *Frederick M. Deutsch, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER and CHAPPELL, JJ.

CHAPPELL, J.

Plaintiff, Carrie Van Auker, administratrix of the estate of John Van Auker, her deceased husband, brought this action to recover damages for his death resulting from collision of two automobiles at an intersection of country roads. Deceased was riding in a Chevrolet coupé owned by defendants Steckley. Defendant Dallas Van Auker, a dealer for them in the sale of hybrid seed corn, was driving the car, at their express direction, as it approached the intersection from the south. Defendant Alfred Lueke was driving the other car as it approached from the east. He was absolved from liability in the trial court and is not involved as a party to this appeal. A jury awarded plaintiff a verdict of $8,000 against all other defendants, and they appeal. We affirm the decision of the trial court.

Defendants' assignments of error are: That the trial court erroneously instructed the jury that deceased was not a guest or engaged in a joint enterprise or partnership as a matter of law; that instructions given the jury were repetitious and thereby prejudicially erroneous; and that the verdict is excessive.

In substance plaintiff's theory of the case is that the deceased was a passenger "giving compensation therefor" in the car of defendants Steckley, driven by their servant at their express direction, in the course of their business, and

for their benefit in the furtherance thereof; that under the doctrine of *respondeat superior* their driver's negligence is imputed to them, and that they and their driver are liable for ordinary negligence.

The theory of defense, so far as it relates to defendants' assignments, is that deceased was a person riding in the car as a guest "without giving compensation therefor" and that defendants are only liable for gross negligence, in which event the case should be reversed and dismissed; or, in the alternative, that defendant driver and deceased were engaged in a joint enterprise or partnership whereby the driver's negligence is imputed to plaintiff, in which event the case should be reversed for a new trial.

It will first be noted that our guest statute (Comp. St. Supp. 1939, sec. 39-1129), in so far as applicable here, provides: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by * * * the gross negligence of the owner or operator * * * of such motor vehicle. For the purpose of this section, the term 'guest' is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor."

The question of whether a person riding in a motor vehicle is a guest, or engaged in a joint enterprise, or other relationship, is generally one for determination in the individual case. 5 Am. Jur. 634, sec. 239. It must be ascertained from the facts establishing the identity of the persons advantaged by the carriage, the relationship between the parties, and the purposes to which the transportation is incident. To these facts we then apply logical constructions of statutory words and phrases approved by definitum-precedent. If the evidence is undisputed, or such that minds of men could not reasonably arrive at any other conclusion, the question is one for decision by the court as a matter of law; otherwise, it is a question for the jury to decide as other issuable facts in the case. 64 C. J. 549; *Mick v. Oberle*, 124 Neb. 433, 246 N. W. 869.

In construing a statute, it is the duty of this court to discover, if possible, the legislative intent from the language of the act and give effect thereto. *Hansen v. Dakota County,* 135 Neb. 582, 283 N. W. 217.

"Compensation" means that which constitutes or is regarded as an equivalent or recompense; that which makes good the lack or variation of something else; that which compensates for loss or privation; amends; remuneration; recompense. The phrase "without giving compensation therefor" in the statute indicates an intention not to limit compensation to persons specifically paying for transportation in cash or equivalent, or to require that it pass exclusively from the passenger to the driver. 8 Words and Phrases (Perm. ed.) 197; *Crawford v. Foster,* 110 Cal. App. 81, 293 Pac. 841; *Haney v. Takakura,* 2 Cal. App. (2d) 1, 37 Pac. (2d) 170; 5 Am. Jur. 634, sec. 239.

Bearing these preliminary rules in mind, we conclude that a person riding in a motor vehicle is a guest if his carriage confers only a benefit upon himself and no benefit upon the owner or operator except such as is incidental to hospitality, social relations, companionship, or the like, as a mere gratuity, and no recovery can be had under our statute except for gross negligence. However, if his carriage contributes such tangible and substantial benefits as to promote the mutual interests of both the passenger and the owner or operator, or is primarily for the attainment of some tangible and substantial objective or business purpose of the owner or operator, he is not a guest. If the latter rule be applicable to the present case, plaintiff could recover for ordinary negligence unless prevented by the defensive theory of imputed negligence. See 4 Blashfield, Cyclopedia of Automobile Law, sec. 2292; Annotations, 82 A. L. R. 1365, 95 A. L. R. 1180; *Doherty v. Edwards,* 227 Ia. 1264, 290 N. W. 672.

The California statute defines a guest in a manner similar to our own. For its construction see *Whitechat v. Guyette,* 19 Cal. (2d) 428, 122 Pac. (2d) 47; *Duclos v. Tashjian,* 32 Cal. App. (2d) 444, 90 Pac. (2d) 140; *Carey v. City*

*of Oakland,* 44 Cal. App. (2d) 503, 112 Pac. (2d) 714. The same conclusions have been reached in a legion of cases from other jurisdictions having comparable statutes. They are too numerous to recount in this opinion.

Assuming that the factual details of the accident are of no import to a decision, we will not recite them. Evidence upon which we determine whether deceased was a guest or engaged in a joint enterprise or partnership is undisputed. It appears in admissions of defendants Steckley, their agents and employees. A careful examination of the record discloses that defendant Steckley's Hybrid Seed Corn Company is a partnership, composed of and owned by defendants Steckley. They produce and sell hybrid seed corn in Nebraska, South Dakota, Kansas and Missouri, with offices at Weeping Water, Nebraska. Defendant Ed Steckley is an owner-manager. They employ a full-time general sales manager in charge of all promotions and sales, and a full-time block man or field supervisor for a part of South Dakota and Nebraska. The latter works under supervision of the general sales manager who directs his work either by letter or telephone in finding and supervising dealers, establishing test plots on farms, promoting dealers' meetings, field days, exhibits, general sales, and other publicity. Defendants Steckley furnished the field supervisor the Chevrolet coupé involved for these purposes. Defendant Dallas Van Auker, a farmer near Battle Creek, Nebraska, was a dealer for the Steckleys, selling their products on commission in his territory.

Deceased was not a dealer and received none of the commissions paid defendant Dallas Van Auker for the sale of defendants' hybrid seed corn. Deceased and defendant Dallas Van Auker, his son, lived in separate homes, but were jointly interested in a farming project of approximately 400 acres, on which they planted some of defendants' hybrid seed corn. They had a test plot on his farm, but they sold no hybrid seed corn from the project. The hybrid seed corn sold by their dealer, defendant Dallas Van Auker, was artificially pollenized, produced and furnished by de-

fendants Steckley. When planted it produces a corn crop product bred to a high production but unfit for seed.

Defendants Steckley planned an elaborate exhibit at the Nebraska state fair, with a booth, pictures, literature for distribution, displays of growing corn, and several bushels of best corn production for sales promotion. Their general sales manager directed their field supervisor to come to the fair and bring with him many samples of their corn from northeast Nebraska, and some of their dealers and boosters of influence to help promotion at the exhibit. Deceased had a wide acquaintance, and was highly regarded in that territory. At their request he had previously helped at their exhibits in the Norfolk sales barn and at the Madison county fair by handing out literature, talking with people, boosting their seed, and promoting sales.

Following the directions of defendants' general sales manager, their field supervisor called at the Van Auker farm and told Dallas Van Auker, their dealer, to get samples of corn ready for the exhibit, invite deceased to go with them, and be ready to leave for Lincoln with him in the Steckley car on Sunday morning. The field supervisor testified that he wanted deceased to go with them because he had been a lot of help to their company in the past in the sale of seed corn; that deceased would have worked in the booth and helped the company boost the sales, and he wanted him to go along for that purpose.

As directed, defendant Dallas Van Auker asked deceased to go, and the latter agreed to do so. The samples of corn were gathered and labelled. The field supervisor arrived on Sunday morning, driving defendants' car. Taking the samples the three of them got in the car, the field supervisor driving, and went to another dealer's farm to collect other samples of corn. Here the field supervisor directed defendant Dallas Van Auker to drive defendants' car, take deceased with him, and follow another car to a neighbor's farm to collect other samples of corn for the exhibit. It is conceded that the field supervisor had full authority to do all this. The field supervisor rode in a car ahead of

them. They started as directed and before arrival the accident happened.

Under these circumstances it will not avail to question the extent of the invitation or to assert that there was no agreement or promise that the deceased would do anything to help or assist the Steckleys in their business. Their duly authorized agents gave deceased an inclusive invitation to go with them, primarily for the attainment of a tangible and substantial objective or business purpose of the owner, and he agreed to go. Further, after the invitation was given he acted upon it. He got in the car and they left for the project, thereby accepting defendants' offer as to time, place, mode and manner. See 13 C. J. 275. Concededly the relationship must be definite and the benefit tangible, but it is not required that the relationship be such that the benefit accruing is the consideration for the transportation agreed upon by the parties. *Doherty v. Edwards, supra.* Deceased was not a guest or person riding "without giving compensation therefor." Cases relied upon by defendants are not applicable to present facts.

Governed by these facts and circumstances there is no relation of partnership, principal and agent, master and servant, or joint enterprise from which negligence of the defendant driver Dallas Van Auker can be imputed to deceased or plaintiff in the case at bar. *Judge v. Wallen,* 98 Neb. 154, 152 N. W. 318; *Jessup v. Davis,* 115 Neb. 1, 211 N. W. 190; *Mick v. Oberle, supra; Garrotto v. Butera,* 123 Neb. 682, 243 N. W. 879; 5 Am. Jur. 786, sec. 501; Annotation, 85 A. L. R. 632. Deceased was merely a passenger "giving compensation therefor" and defendants are liable to plaintiff for ordinary negligence. There is no contention here that the trial court did not properly instruct upon the contributory negligence of the deceased himself, if any existed.

Defendants Steckley were the masters and defendant Dallas Van Auker, the driver, was their agent or servant, and not the agent or servant of the deceased. The law imputes to the principal or master responsibility for the negligent

acts of his agent or servant done in obedience to the express orders or directions of the master or within the scope of the employee's authority or employment in his master's business, and if those acts cause injury to third persons the law holds the principal or master liable in damages therefor. 5 Am. Jur. 709, sec. 373; 35 Am. Jur. 959, sec. 532; 38 Am. Jur. 922, sec. 236; *LaFleur v. Poesch,* 126 Neb. 263, 252 N. W. 902; *Peterson v. Brinn & Jensen Co.,* 134 Neb. 909, 280 N. W. 171; *Vanderlippe v. Midwest Studios,* 137 Neb. 289, 289 N. W. 341.

We turn to defendants' assignment that the trial court's instructions were prejudicially repetitious. An examination of all of them requires the application of the rule perfected by this court in *Gran v. Houston,* 45 Neb. 813, 64 N. W. 245, that, "Where, in order to fairly and intelligibly present all the issues in a case to the jury by the instructions, it becomes necessary to repeat a proposition, its repetition, in proper connection with other facts or principles involved, is not erroneous." And in *Denise v. City of Omaha,* 49 Neb. 750, 69 N. W. 119, this court stated: "It is not ground for the reversal of a case that the trial court repeated a proposition of law in the instructions each time in proper connection with facts or other principles involved, or where it does not appear that the effect was to perplex or mislead the jury." See, also, *City Nat. Bank v. Thomas,* 46 Neb. 861, 65 N. W. 895.

In an action sounding in damages merely where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and with their verdict the courts are reluctant to interfere. A verdict may be set aside as excessive by the trial court or on appeal when, and not unless, it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or it is clear that the jury disregarded the evidence or rules of law. 15 Am. Jur. 621, sec. 205; *Heiden v. Loup River Public Power District,* 139 Neb. 754, 298 N. W. 736; 3 Am. Jur. 452, sec. 893; 20 R. C. L. 282, sec. 66.

Evidence as to damages is undisputed. Deceased was a man 58 years of age, in good health, highly regarded in his community, whose labor and income were ordinarily devoted to his home and family. For the past three years his net income averaged more than $1,200 a year, exclusive of returns for poultry and produce. It was stipulated that the hospital, medical, ambulance, and other expenses were $1,049.20. There was then a recovery of $6,950.80 for death, exclusive of pain and suffering. With an expectancy of 15 years this recovery would be an average of less than $465 a year. We find that the verdict is not excessive.

We have given consideration to other assignments of error not discussed in this opinion, and decide that they are without merit. Since the record discloses no error prejudicial to defendants, and we find the verdict amply supported by the evidence, the judgment is affirmed.

AFFIRMED.