HELEN O. HOFRICHTER, APPELLEE, V. KIEWIT-CONDON-CUNNINGHAM, A JOINT VENTURE, PETER KIEWIT SONS, A CORPORATION, CONDON & CUNNINGHAM, A CO-PARTNERSHIP, AND GLENN KELLER, APPELLANTS.

22 N. W. 2d 703

FILED MAY 10, 1946. No. 32002.

*Blackledge & Conway* and *Lloyd W. Kelly,* for appellants.
*B. J. Cunningham,* for appellee.
*Fraser, Connolly, Crofoot & Wenstrand* and *William H. Wright,* amici curiae.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE. J.

Plaintiff brought action for personal injuries suffered by her in an automobile-truck collision, which occurred on a Platte River bridge south of Grand Island. The verdict and judgment was for $11,000, from which defendants appeal.

There is evidence in the record tending to establish the following facts: The plaintiff, Helen O. Hofrichter, was 33 years of age at the time of the accident, which occurred on the afternoon of December 9, 1943. She and her husband, Harold E. Hofrichter, were employed at the United States Naval Ammunition Depot at Hastings, where she was earning $200 a month. Earl Stoeger, a married man, 48 years of age, worked at the same place, and the three had for some time been riding from Grand Island to Hastings with Harold E. Jensen, who was the owner of a 1941 Tudor Ford sedan, and each of the three parties in the back seat paid the owner of the Ford 50 cents for each round trip. The three riders in the back seat had to go to a street intersection across from the post office in Grand Island, where the Jensens picked them up daily a little after four o'clock in the afternoon. It had been snowing slightly on the day of the accident, and the road was damp from the melted snow.

The accident occurred about 4:30 p. m., about six miles south of Grand Island on Highway No. 281, on a Platte River bridge of six spans, approximately 500 feet in length. The traveled portion of this bridge was 17 feet one inch wide. Mrs. Jensen drove the Ford onto the bridge at about ten miles an hour, and had gone onto the north end of the bridge for some distance before Glenn R. Keller, 42 years of age, who was the driver for the defendants, drove up

around a slight curve onto the south end of the bridge in a large tractor-truck, the tractor weighing three tons, which had attached to it an eight-wheel chassis trailer, weighing 3½ tons, on which there was a large crane, or high loader, equipped with a bucket for hoisting material, which equipment weighed 6½ tons, the combined weight being over 13 tons, and the length of this outfit being 32 to 35 feet, and the width 90 inches.

The plaintiff's husband testified that Keller was driving his truck over the white center line of the bridge at an excessive rate of speed, so the Ford did not have room to pass, and had practically stopped at the time of the accident. At a point about 140 to 150 feet from the south end of the bridge, a collision occurred, and the Ford was knocked or pushed backward toward the north about 50 feet. Witness Stoeger testified that the truck straddled the center line of the bridge and was traveling 35 miles an hour, and said: "He knocked us back the first time he hit and then hit us again and then the third time turned us around and turned us west and drove us into the railing." The effect was to whirl the Ford around at right angles to the bridge, so it came to rest with its front end jammed into the west side of the bridge; the front seat and three of the occupants, including plaintiff, were thrown out the door, and the rear end of the Ford was wedged into the side of the trailer, which forced the tractor-trailer firmly against the east side of the bridge, where they were locked together and blocked all traffic for about seven hours.

The defendants, on the other hand, maintained that Keller was driving his truck on the proper side of the road, and that the Ford, coming from the north, skidded into the front of the truck, and that Mrs. Jensen had lost control of the Ford because of a slightly frozen or slippery condition of the roadbed; that when the truck came to rest it was as far to the right as it could be driven, and had rubbed against the side of the bridge for the last ten feet.

As a result of the accident, Mrs. Jensen, the driver of

the Ford, was killed in the collision, and her husband was injured in the accident but died several months later from other injuries. It is alleged that the plaintiff, who was riding between her husband and Earl Stoeger on the back seat, was rendered unconscious by the accident and suffered several fractures of the pelvis, a twisting or separation of the coccyx, a fractured collarbone, a displacement of the left sacroiliac joint, with a tipping of the pelvic bone, and a lateral curvature of the lower spine which makes the left leg over an inch shorter than the right, resulting in permanent partial disability. She remained in a hospital for a period of two months.

A jury returned a verdict against all defendants, and in their motion for a new trial defendants set out 38 errors. This motion was submitted to the court on May 19, 1945, and overruled, and judgment was entered for plaintiff and against all defendants.

The defendants set out a number of assignments of error, and charge that the court erred in giving instructions Nos. 3 and 4 and supplemental instructions Nos. 1 and 2.

It is also charged that the court erred in not discharging the jury from further deliberation when they announced, after 14 hours of deliberation, that they could not reach a verdict, and also erred in permitting them to separate for eight hours and then continue their deliberations.

The defendants charge that the trial court erred in failing to submit to the jury that the plaintiff was engaged in a joint enterprise at the time of the accident, and should have instructed the jury on the rule of negligence with reference to a joint enterprise.

It is charged that the verdict of the jury was grossly excessive, and finally, that the verdict of the jury is not substantiated by the physical facts of the accident.

In supporting these assignments of error, the defendants set out seven propositions of law, with numerous citations in support thereof. The argument in support of the objection to instruction No. 3 is that it fails to state the general defense of the defendants, which was that the de-

fendants were guilty of no negligence and are not responsible for damages, and that if the defendants were without negligence there could be no recovery, and requiring the defendants to prove that Gladys Jensen was entirely and solely responsible for the accident.

By instruction No. 2 the court gave a synopsis of the petition and its averments in a manner to which no objection is made, and gave a fair synopsis of the separate answers of the defendants, in which it is stated that the defendants admit that an accident occurred at the time and place stated, admit that Glenn Keller was driving the truck involved in the accident, admit that the plaintiff received some injuries, and deny each and every other allegation of plaintiff's petition. "For further answer the defendants * * * allege that the plaintiff was a passenger in an automobile operated by one Gladys Jensen and that the collision and the resulting injuries to the plaintiff was the sole proximate result of the negligence of Gladys Jensen and not the result of any carelessness or negligence on the part of the defendants or any of them."

The allegation in the answer from which this was taken by the court reads as follows: "* * * that any and all injuries, damages and losses suffered or sustained by the plaintiff was and is the result of the negligence of one Gladys Jensen, the driver of the car in which the plaintiff was riding under the facts and conditions as set forth in the paragraph immediately above; the negligence of said Gladys Jensen being directly contributory thereto and was not and is not the result of any carelessness or neglect on the part of these defendants."

It appears to the court that this instruction No. 2 did sufficiently set out that the general defense was that the collision and injuries were "not the result of any carelessness or negligence on the part of the defendants or any of them."

The court followed with instruction No. 3, in which he endeavored to put the important parts of the petition and the answer into six short sentences, and naturally in this

condensation it was impossible to put in all of the allegations in the seven single-spaced pages of the contents of the petition and answer. In our opinion, the alleged errors in regard to instructions Nos. 2 and 3 are without merit.

It is next charged as reversible error that in the answers defendants alleged "that the plaintiff at the time of said accident was engaged in a joint enterprise with the owner and driver of the car in which the plaintiff was riding," and the court refused to submit this issue to the jury. The defendants support this argument by our decision in the case of Judge v. Wallen, 98 Neb. 154, 152 N. W. 318.

An examination of that case discloses that the defendants were traveling salesmen, canvassing the same territory. One owned the car and operated it, and the other paid sums equal to the cost of gasoline and oil. It was held to be a joint enterprise, and that the circumstances were such that the negligence of one might be imputed to the other. A further discussion of this case is found in Mick v. Oberle, 124 Neb. 433, 246 N. W. 869.

We might also examine another Nebraska case, Zajic v. Johnson, 126 Neb. 191, 253 N. W. 77. An administrator brought an action to recover for the death of Zajic, who was riding in a Packard sedan. The deceased had organized an orchestra of seven members, which played for dances and other entertainments, and this unincorporated musical organization purchased the automobile. Each of the seven members owned a share in this automobile, and they divided the expenses of gasoline, oil, and repairs, and the car was used solely for transporting members in filling engagements by this orchestra. It was held that this was a joint enterprise.

A careful reading of these two cases shows how entirely different the facts were from those in the case at bar.

"Where an occupant of a motor vehicle is engaged in a common or joint enterprise with the driver and has an equal right to direct and control the operation of the vehicle, the contributory negligence of the driver is imputable

to the occupant. This is so although one takes no actual control while the other is driving. To constitute occupants of a motor vehicle joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right to direct and control the conduct of each other in the operation of the vehicle." 42 C. J., Motor Vehicles, § 957, p. 1179.

"* * * if an occupant of an automobile is engaged in a joint enterprise with the driver and is injured by reason of the concurrent negligence of the driver and a third person, the driver's contributory negligence will be imputed to such occupant and will bar recovery by him against the third person." 5 Am. Jur., Automobiles, § 500, p. 786.

However, the evidence in the case at bar discloses that the plaintiff paid a straight charge of 50 cents to be picked up at a public street corner in Grand Island and driven to her work at Hastings and back to the same street corner. It was a simple contract for hire, and not in any sense a joint enterprise.

"Thus it is held that the negligence of the driver of an automobile for hire is not attributable to a passenger having no control over the driver further than to indicate the route to be followed or the place to which the car is to be driven." Annotation, 90 A. L. R. 633. See, also, Jessup v. Davis, 115 Neb. 1, 211 N. W. 190; 5 Am. Jur., Automobiles, § 495, p. 783.

"When the facts are such that reasonable minds can draw but one conclusion, it is the duty of the court to decide the question, and not require the jury to deliberate upon evidence from which they can reach but one possible conclusion." Witthauer v. Paxton-Mitchell Co., 146 Neb. 436, 19 N. W. 2d 865.

"The test of a joint enterprise between the driver of an automobile and another occupant is whether they were jointly operating and controlling the movements of the vehicle or had an equal right to do so. * * * The absence of this essential element of joint control in the cases at bar brings them within the rule of Trumpfeller v. Crandall,

130 Me. 279, 155 A. 646. We find no error in the refusal of the court to submit the defendant's theory or claim of joint enterprise. Lacking evidence even tending to establish such a relation, that issue was not in the cases. Exceptions reserved to the charge and refusal to instruct on that point can not be sustained." Illingworth v. Madden, 135 Me. 159, 192 A. 273, 110 A. L. R. 1090.

In the case at bar, the trial court having reached a correct conclusion that under the evidence there was disclosed a contract of hire, it would have been error to have submitted the question of joint enterprise to the jury.

Having reached the conclusion that the relationship of the parties in the automobile was one of hire, and not joint enterprise, it removes any objection to instruction No. 4, which correctly stated that it was no defense for the defendants to prove that the negligence of Gladys Jensen was a contributing proximate cause of the injury to the plaintiff.

We will now examine the errors alleged in calling in the jury, allowing them to separate for eight hours in the daytime, recalling them, reading them additional and supplemental instructions, and directing them to retire for further deliberation.

The defendants insist that the court erred in not discharging the jury when several jurors said they could not reach a verdict, and others said they could not understand the instructions, after they had deliberated for 14 hours.

The bill of exceptions gives us the full record of this matter. At about 7:30 a. m., after the jury had deliberated through the night, they were called into court. The defendants' statement of remarks made at that time by jurors is correct. Other jurors said they did not understand instructions Nos. 3 to 6. The trial judge then said: "We can give you a supplemental instruction, if we feel it is possible to make it any clearer. * * * I think I am going to permit you to separate now and come back at four o'clock and resume your deliberations. So remember during this time, that you are separated, you are not to talk

to anyone about the case. There would be a danger that someone might approach you and find out what was causing your difficulty and how you stood. That is a matter you should keep to yourself. Talk to no one and permit no one to talk to you. Go home and get some rest and come back here at four o'clock with a rest. Maybe it is possible to clarify this instruction."

The trial court may recall a jury and give additional instructions, although but one juryman request it, and the consent of counsel is not necessary, and this court in one case held that this matter is so far within the discretion of the trial court as not to present a subject for review. See Hardesty v. State, 95 Neb. 839, 146 N. W. 1007.

This custom of giving additional instructions is employed, as a usual thing, after the jury has deliberated for some time and is apparently unable to agree, and it is not necessary for the court to await a formal request from the jury. It has been the general rule that any instruction which would have been proper in the first charge to the jury may be given as a supplemental instruction to a jury deliberating. The court may re-read the former instructions in connection with the new instructions, or may simply give the additional instructions, for if the jury has asked to be instructed on a particular point it would not be improper to read an instruction answering the question. The jury should be brought before the court in a body, and such additional instructions are given with the same formality with which the original instructions were given.

We find no error in allowing this jury to separate after being out all night, it being a civil case. The time which jurors are to be kept together, before they are finally discharged as unable to agree on a verdict, rests largely in the discretion of the trial court, who may consider the importance of the case, the expense of a retrial, and the possibility of reaching a verdict.

An examination of the four supplementary instructions, given after the jury had deliberated for 14 hours, dis-

closes simply an attempt by the court to simplify and clarify former instructions, and nothing prejudicial appears therein.

The defendants charge as ground for reversal that the verdict is grossly excessive, and was the result of passion, prejudice, or some other means not appearing in the record, and that the jury disregarded the medical evidence and the rules of law. We are cited by the defendant to three cases in support of this alleged error. In the first case, Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451, the statements are made which are embodied in this alleged error, but an examination of the case shows that a verdict of $6,950.80 was held not to be excessive. In the second case, Bonacci v. Cerra, 134 Neb. 588, 279 N. W. 314, the guest in an automobile secured a verdict for $8,500 for bruises and abrasions and a fracture of the humerus of the right arm, which the surgeon said would recover a 50 to 65 percent use of the arm within another six months. This verdict was set aside as excessive. In the last case cited, Rich v. Dugan, 135 Neb. 63, 280 N. W. 225, plaintiff suffered a black eye and a bloody nose. The physician testified that no pathological condition existed in the eye or nose, and a verdict of $1,475 was set aside as excessive.

The case of Berg v. Griffiths, 127 Neb. 501, 256 N. W. 44, is republished in 102 A. L. R. 1124, and there it is followed by an annotation of 454 pages, giving verdicts held excessive and those held not excessive for definite forms of personal injuries. In this exhaustive summary, at page 1189 we note the Nebraska case of Schwarting v. Ogram, 123 Neb. 76, 242 N. W. 273, where a verdict of $15,000 for injuries to a schoolgirl 16 years of age was affirmed, and on page 1209 we find Monasmith v. Cosden Oil Co., 124 Neb. 327, 246 N. W. 623, in which a verdict of $4,250 was affirmed for injuries to ribs, ankle, and knee.

Many verdicts are discussed in the case of Mangiameli v. Ariano, 126 Neb. 629, 253 N. W. 871, in which a verdict of $15,000 had been cut by the trial court to $7,500,

and this court affirmed it at $10,000. See, also, Sutton v. Inland Construction Co., 144 Neb. 721, 14 N. W. 2d 387.

We have heretofore set out in detail in this opinion the personal injuries which the plaintiff suffered in the accident in the case at bar, and we believe that these injuries, considering the permanent shortening of one leg, fully warranted the jury in returning the verdict they did in this case, and that the same is not excessive.

We will now discuss the assigned error that the verdict is not supported by the physical facts. In support of this assignment, it is argued that the defendants' heavy truck-trailer was being driven very close to the right side of the bridge, so that there was a space of 9 feet 7 inches left, in which the Ford, 70 inches in width, could have been safely driven had not its driver entirely lost control of the Ford, and it is argued that the defendants' driver was not negligent in any way.

A careful consideration of the excellent photographs and the evidence of all the witnesses is sufficient to warrant the jury in finding that the accident occurred about as follows: The Ford was driven on the north end of the bridge at about ten miles an hour, and was considerably over halfway across the bridge when the defendant Keller drove onto the south end of this bridge. There was a slight curve in the road to the right as you go south from the bridge. In order to get this 13½-ton outfit, which was nearly 35 feet long, safely on the bridge, the driver straddled the white line in the center of the bridge, and came onto the bridge at a speed of 30 to 35 miles an hour. The driver of the Ford immediately slacked down its speed,—one witness says it had nearly stopped,—but the defendants' driver could not use his brakes on the slippery road for fear his trailer would switch around, and the air brakes, if applied on the rear trailer, did not appear to hold. The defendants' outfit struck the Ford several times, knocking it back on the bridge and whirling it around at right angles, and when the Ford was crushed between the truck and the side of the bridge the steel chassis of the Ford forced the

truck tightly up against the right side of the bridge for the last moment or two before it came to rest.

In our opinion, the physical facts are all in accordance with the verdict rendered.

We have examined all of the other assignments of error, and finding no prejudicial error in the record the judgment is hereby affirmed.

AFFIRMED.