**Roy E. BAILEY, Appellant,**

v.

**Coy W. PENNINGTON et al., Appellees.**

**No. 16297.**

United States Court of Appeals
Eighth Circuit.

.Jan. 27, 1960.

Rehearing Denied Feb. 26, 1960.

Donald P. Lay, Omaha, Neb., made oral argument for appellant.

Harold Kauffman, Omaha, Neb., presented oral argument for appellee, Pennington, and Mr. Harry B. Otis, Omaha, Neb., made argument for appellee, Chicago and Northwestern Railway System.

Before GARDNER, SANBORN and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Plaintiff-appellant brought this suit for personal injuries against defendant-appellee Pennington, driver of a vehicle in which plaintiff was riding, and against defendant-appellee Chicago and Northwestern Railway, whose train collided with the vehicle at a crossing within the city limits of Elgin, Nebraska, on January 14, 1955. Diversity of citizenship and the amount involved make for federal court jurisdiction. At the conclusion of the plaintiff's case the trial court granted motions for directed verdicts in behalf of each of the defendants on the

grounds that: (1) The plaintiff was a "guest" within the meaning of the Nebraska guest statute and, therefore, was not entitled to recover against the defendant Pennington, there being no showing which could justify a finding of gross negligence; (2) there was no negligence on the part of the defendant railway which proximately contributed to the accident; and (3) the plaintiff could not recover against the railway in any event because he, himself, had been contributorily negligent. Judgments were accordingly entered for the defendants, from which result plaintiff appeals.

Plaintiff was a training officer in the vocational rehabilitation education division of the Veterans Administration Regional Office. The Veterans Administration contracted with the Nebraska State Department of Vocational Education for the latter to provide rehabilitation instruction for disabled veterans. Defendant Pennington was an instructor employed by the state under this program. The contract provided for the payment of a fixed per pupil tuition by the Veterans Administration to cover the expenses of rehabilitation instruction, the salary and travel costs of the instructors, and the like. It was the duty of the training officer to confer with the instructor at least once a month with respect to each veteran in the program for the purpose of giving the instructor all pertinent information which would aid these pupils in their rehabilitation, and to check upon their progress to this end. The training officer, along with the instructor, also met at least once a month with the disabled veterans at the site of their job to ascertain the effectiveness of the instruction. If the training officer determined that a veteran was not satisfactorily progressing toward his rehabilitation goal, he was authorized to remove him from the program, which action would have the effect of terminating the tuition payments made to the state for that veteran and consequently diminishing the salary of the instructor. It was the practice of the training officer and the instructor to travel in only one car when visiting a disabled veteran. The purpose of this arrangement was to save time by allowing them to discuss the veteran and his rehabilitation problems while traveling. The use of a single vehicle also resulted in a saving to the government in travel expense reimbursements.

In the instant case, the accident occurred when plaintiff and defendant Pennington were returning in the latter's car from a consultation at a disabled veteran's farm. It had been their practice always to use Pennington's car, rather than the plaintiff's for this purpose as he had expressed a desire to receive the mileage allowance. At the time of the accident plaintiff and Pennington were proceeding in an easterly direction on Highway No. 80 within the city limits of Elgin, Nebraska. A train of the defendant railway company was traveling in a southerly direction toward Highway No. 80. West of the crossing visibility of the railroad track to the north from Highway 80 was obscured by houses, trees and bushes. Plaintiff testified that when the car was within 200 to 250 feet of the railroad crossing Pennington reduced his speed to 20 to 25 miles per hour from an estimated speed of 35 to 40 miles per hour. As the automobile approached the railroad crossing, plaintiff looked both to the right and to the left but failed to see the approaching train until they were within 50 to 75 feet of the track, at which time he hit Pennington with his left arm and pointed to the train. Pennington looked toward the train but did nothing. At that time the engine of the train was about 100 to 125 feet from the crossing and, according to plaintiff, traveling at a speed between 30 and 35 miles per hour, which speed, he testified, was at no time lessened prior to the impact. The train struck the car and pushed it into a switch 75 feet down the track, with the engine continuing on an additional 40 feet. Prior to the accident plaintiff did not hear any whistle or bell.

Fred Anderson, the train engineer, testified that he was traveling approximately 18 to 20 miles per hour. When the

engine was within 400 feet of the crossing he saw the Pennington car, which was at that time 600 feet west of the track. Anderson did not take his eyes off the car and when it was approximately 200 feet away from the crossing he could see the driver's face and could tell that he wasn't looking at the train. Anderson estimated that the speed of the car was then 35 to 40 miles an hour and that it continued up to the crossing at the same rate of speed. 200 feet west of the crossing a road leading to the south running parallel with the railroad track intersected with Highway No. 80. Anderson testified that when the vehicle passed that road without turning, he knew it was not going to stop for the train. He claimed to have then sounded his whistle and applied his automatic brake at which time, he asserted, the car was closer to the track than it was to the road leading south and the train engine 120 feet from the crossing.

We first consider whether plaintiff was a guest within the purview of § 39–740 R.R.S.Neb.1943, which statute provides:

"'Guest passenger,' defined; claim for damages; rights. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of such motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle. *For the purpose of this section, the term 'guest' is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor,* but shall not be construed to apply to or include any such passenger in a motor vehicle being demonstrated to such passenger as a prospective purchaser."
(Emphasis supplied.)

The court below found that the plaintiff did come within the statutory definition and that, as the facts did not justify a finding of gross negligence, he could not recover from the defendant Pennington. We think the trial court was in error in so concluding.

The Supreme Court of Nebraska, in Van Auker v. Steckley's Hybrid Seed Corn Co., 1943, 143 Neb. 24, 8 N.W.2d 451, 453, in respect to the considerations controlling whether or not a passenger is a "guest" under the statute, explained as follows:

"The question of whether a person riding in a motor vehicle is a guest, or engaged in a joint enterprise, or other relationship, is generally one for determination in the individual case. 5 Am.Jur. 634, sec. 239. It must be ascertained from facts establishing the identity of the persons advantaged by the carriage, the relationship between the parties, and the purposes to which the transportation is incident. To these facts we then apply logical constructions of statutory words and phrases approved by definitum-precedent. If the evidence is undisputed, or such that minds of men could not reasonably arrive at any other conclusion, the question is one for decision by the court as a matter of law; otherwise, it is question for the jury to decide as other issuable facts in the case. 64 C.J. 549; Mick v. Oberle, 124 Neb. 433, 246 N.W. 869.

\* \* \* \* \* \*

"'Compensation' means that which constitutes or is regarded as an equivalent or recompense; that which makes good the lack or variation of something else; that which compensates for loss or privation; amends; remuneration; recompense. The phrase 'without giving compensation therefor' in the statute indicates an intention not to limit compensation to persons specifically paying for transportation in cash or equivalent, *or to require that it pass exclusively from the passenger to the driver*. 8 Words and Phrases, Perm.Ed. p. 197; Crawford v. Fos-

ter, 110 Cal.App. 81, 293 P. 841; Haney v. Takakura, 2 Cal.App.2d 1, 37 P.2d 170, 38 P.2d 160; 5 Am. Jur. 634, sec. 239.

"Bearing these preliminary rules in mind, we conclude that a person riding in a motor vehicle is a guest if his carriage confers only a benefit upon himself and no benefit upon the owner or operator except such as is incidental to hospitality, social relations, companionship, or the like, as a mere gratuity, and no recovery can be had under our statute except for gross negligence. However, *if his carriage contributes such tangible and substantial benefits as to promote the mutual interests of both the passenger and the owner or operator, or is primarily for the attainment of some tangible and substantial objective or business purpose of the owner or operator, he is not a guest.* If the latter rule be applicable to the present case, plaintiff could recover for ordinary negligence unless prevented by the defensive theory of imputed negligence. See 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed. § 2292; annotations 82 A.L.R. 1365, 95 A.L.R. 1180; Doherty v. Edwards, 227 Iowa 1264, 290 N.W. 672." (Emphasis supplied.)

Applying those general principles to the facts of that case, the court held that, where the defendant seed company invited a farmer to help them promote their products at a state fair and an accident occurred while the farmer was being transported to the site of the fair in the company's automobile, he was not a "guest" within the meaning of the statute, but was rather a "passenger" giving "compensation" for the transportation.

The court in Van Auker relied upon decisions of the courts of California because of the similarity of its guest statute to that of Nebraska. In Martinez v. Southern Pacific Co., 1955, 45 Cal.2d 244, 288 P.2d 868, 872, the Supreme Court of California held that, where the passenger contributed a portion of her wages to the support of the family of which the defendant driver was a member, a guest relationship did not exist where the transportation was furnished her so that she could reach her place of employment. In so holding, the court explained that:

"Where the trip is primarily for a business purpose rather than a social purpose, *it is sufficient* to show that the driver was to derive a substantial benefit from the transportation, Kruzie v. Sanders, supra, 23 Cal.2d 237, 242, 143 P.2d 704; and such substantial benefit may be found *if the transportation was for the mutual economic benefit of all concerned.* Thompson v. Lacey, supra, 42 Cal.2d 443, 447, 267 P.2d 1." (Emphasis supplied.) Martinez v. Southern Pacific Co., 288 P.2d at page 872.

Similarly, in Thompson v. Lacey, 1954, 42 Cal.2d 443, 267 P.2d 1, 3, the California court ruled that a passenger was not a guest where he was injured while being transported by a co-employee to a meeting called by their employer because the driver was being reimbursed for his mileage costs by the employer and the court knew " * * * of no authority, however, which holds that compensation for the transportation must be paid by the one transported in order to make it transportation for compensation under section 403 of the Vehicle Code", and because, regardless of the reimbursement, the trip to the conference "was for the mutual benefit of all, * * *."

In the instant case, the carriage of the plaintiff in defendant Pennington's car promoted the "mutual interests of both the passenger and the owner or operator" and contributed "tangible and substantial benefits" to each. Van Auker v. Steckley's Hybrid Seed Corn Co., supra, 8 N.W.2d at page 453. The defendant was compensated for providing the plaintiff and himself with transportation to the disabled veteran's farm. By so doing, he was able to receive information

and advice which would enable him more effectively to direct the rehabilitation of the veteran. This, in turn, would result in the continuation of government payments to the State of Nebraska for the disabled pupil's tuition which, consequently, would assure the continuation of the defendant's compensation as his instructor. In short, there was no gratuitous character to the transportation and it could in no way be deemed to have benefitted only the plaintiff.

Defendant Pennington relies upon Born v. Matzner's Estate, 1954, 159 Neb. 169, 65 N.W.2d 593, to support his contention that plaintiff was a "guest". In that case the court accepted the principles established in Van Auker v. Steckley's Hybrid Seed Corn Co., supra, but found that the facts in the case before it showed that any benefit to the operator from the carriage of the passenger was "remote, vague, and speculative", and that:

> "The transportation furnished by deceased did not promote or benefit any mutual interest or business of the host and the guest. The deceased and the guild members each had a different purpose for attending the regional meeting. The former gratuitously transported the latter motivated by a desire to be kind and helpful and to encourage the work of the guild. * * * There was no mutual interest of deceased and appellant that could have been served by their joint presence at the meeting." Born v. Matzner's Estate, supra, 65 N.W.2d at pages 598, 599.

That situation, as we have already demonstrated, is manifestly not the case here. We, therefore, conclude that plaintiff was not a "guest" within the meaning of the guest statute and that ordinary negligence, if established, would sustain his recovery against defendant Pennington.

■ We next consider the question of whether or not the trial court was in error in concluding that, as a matter of law, there was no showing of any negligence on the part of the railroad which contributed to the accident. Plaintiff's complaint charged that the railroad engineer was negligent in failing to have his train under proper control, in operating at an excessive rate of speed and in failing to give proper warning. The evidence relevant to these allegations was in dispute. The plaintiff testified, on the one hand, that the speed of the train at all times immediately prior to the collision was between 30 and 35 miles per hour, which speed was shown to be in excess of the railway's own limit of 25 miles per hour for that area. Defendant railway's engineer, on the other hand, stated that his speed when approaching the crossing was 18 to 20 miles per hour, that he observed the defendant Pennington's automobile continuously from the time it was 600 feet west of the crossing to the time of the accident, that when the vehicle was 200 feet from the tracks he realized that Pennington did not see the train and was not going to stop, that he was at that time approximately 120 feet from the crossing, and that he then applied his air brakes. Plaintiff's expert witness, however, testified that a train similar to that involved in this accident, traveling at a rate of 18 to 20 miles per hour, equipped with air brakes, could be brought to a complete stop in a distance of 100 to 125 feet, yet the evidence here showed that the Pennington vehicle was pushed 75 feet down the track after the impact and that the train continued on for another 40 feet beyond that before stopping. There was additional conflict as to whether or not the train had warned of its approach by sounding its bell or whistle.

■ The Nebraska Supreme Court, in Craig v. Chicago, St. P., M. & O. R. Co., 1914, 97 Neb. 426, 150 N.W. 374, established the rule that the care required of a railroad in traversing public highways depends upon the nature of the crossing and the probability of danger. We do not think that the circumstances of this case were such that reasonable men could come to but the single conclu-

sion that there was no negligence established on the part of the railroad. Further, under the evidence presented, a finding of negligent conduct by the railroad would necessarily justify the further conclusion that such negligence contributed to the cause of the accident. We must conclude, therefore, that the trial court was in error in failing to submit the issue to the jury.

■■ In granting the defendant railway's motion for a directed verdict, the trial court stated that, even if the plaintiff were able to make out a prima facie case of negligence against it, " * * * Bailey was guilty of such contributory negligence as a matter of law as will bar his recovery in failing to give timely warning of the approach of the train at a time when the warning could be and would be effective and if it could be considered that he gave any warning at all." Plaintiff testified that Pennington had difficulty with his hearing and that when he, plaintiff, first saw the approaching train, he hit Pennington's arm and pointed to it. Admittedly, a passenger in an automobile is under a duty to warn the driver of any perceived danger and he may be found guilty of contributory negligence, as a matter of law, for his failure to do so. See, e. g., Pankonin v. Borowski, 1948, 167 Neb. 382, 93 N.W.2d 41, 46; Bartek v. Glasers Provisions Co., 1955, 160 Neb. 794, 71 N.W.2d 466, 472; Kuska v. Nichols Const. Co., 1951, 154 Neb. 580, 48 N.W.2d 682, 685. However, whether or not the warning which had been given here was timely and adequate was clearly a jury question. Kepler v. Chicago, St. P., M. & O. R. Co., 1923, 111 Neb. 273, 196 N.W. 161, 164 (alternative holding). The trial court erred in holding that the plaintiff was guilty of contributory negligence as a matter of law.

■■ It is finally claimed by the defendant railway company that plaintiff and defendant Pennington were, as a matter of law, engaged in a joint enterprise and that, accordingly, the negligence of Pennington was imputable to the plaintiff, thus barring any recovery by him from the railway. The law of Nebraska in respect thereto is well stated by its Supreme Court in Hofrichter v. Kiewit-Condon-Cunningham, 1946, 147 Neb. 224, 22 N.W.2d 703, 707, 164 A.L.R. 1256:

" 'Where an occupant of a motor vehicle is engaged in a common or joint enterprise with the driver and has an equal right to direct and control the operation of the vehicle, the contributory negligence of the driver is imputable to the occupant. This is so although one takes no actual control while the other is driving. To constitute occupants of a motor vehicle joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right to direct and control the conduct of each other in the operation of the vehicle.' 42 C. J., Motor Vehicles, 957, p. 1179."

The facts in the instant case are comparable to Van Auker v. Steckley's Hybrid Seed Corn Co., supra, where the Nebraska court stated at page 455 of 8 N.W.2d:

"Governed by these facts and circumstances there is no relation of partnership, principal and agent, master and servant, or joint enterprise from which negligence of the defendant driver Dallas Van Auker can be imputed to deceased or plaintiff in the case at bar. Judge v. Wallen, 98 Neb. 154, 152 N.W. 318, L.R.A.1915E, 436; Jessup v. Davis, 115 Neb. 1, 211 N.W. 190, 56 A.L.R. 1403; Mick v. Oberle, 124 Neb. 433, 246 N.W. 869; Garrotto v. Butera, 123 Neb. 682, 243 N.W. 879, 5 Am. Jur. 786, sec. 501; annotation 85 A.L.R. 632. Deceased was merely a passenger 'giving compensation therefor' and defendants are liable to plaintiff for ordinary negligence."

The defendant railway relies upon a number of Nebraska decisions to support its contention that, under the above standard, a joint enterprise existed here in the operation of the Pennington vehicle. In Moreland v. Chicago & Northwestern Ry. Co., 1928, 117 Neb. 456, 220

N.W. 692, the parties jointly owned the automobile, shared the costs of its operation, and used it to further their business partnership. In Judge v. Wallen, 1915, 98 Neb. 154, 152 N.W. 318, L.R.A. 1915E, 436, the parties were co-employees and shared the expense of operating the automobile which was used in support of their mutual business interests. Similarly, the case of Neusbaum v. Chicago & Northwestern Ry. Co., 1956, 162 Neb. 754, 77 N.W.2d 299, involved co-employees. Additionally, it turned upon and cited precedents establishing the passenger's own direct negligence. Those decisions, then, are manifestly distinguishable from the instant case. The evidence presented here showed that plaintiff and defendant Pennington were not co-employees, that the automobile was solely owned by Pennington, and that he alone had the right to control its operation. Clearly, the point is not well taken.

Reversed and remanded for new trial.