LYDIA KLAUS, APPELLEE, v. SOLOMAN VALLEY STAGE LINES COMPANY, APPELLANT.

FILED JANUARY 31, 1936.　No. 29434.

C. L. Clark, J. B. Chambers and Dressler & Neely, for appellant.

Beghtol, Foe & Rankin, contra.

Heard before GOSS, C. J., ROSE and PAINE, JJ., and REDICK and KROGER, District Judges.

REDICK, District Judge.

The plaintiff, Lydia Klaus, brings this action to recover damages for injuries which she sustained as the result of

a collision between the Chevrolet roadster in which she was riding, driven by defendant Chester Wrightsman, and a bus of the Soloman Valley Stage Lines Company, upon Federal Highway No. 6, opposite a private driveway leading from a roadhouse or tavern known as Fred Hays' Place about a mile west of the city limits of Lincoln. The petition alleges that, as the Chevrolet was being driven across the highway, defendant's bus, driven by its servant, negligently collided with it, causing plaintiff serious injuries. The negligence charged is that the bus was being driven at a high and unlawful rate of speed, to wit, more than 20 miles an hour, that defendant negligently failed to keep a proper lookout, negligently failed to exercise proper care to avoid a collision after he knew that a continuation of his course would so result, and that he negligently drove the bus, while proceeding east, on the north half of the highway at the point of the accident. The answer of defendant denies that its servant was guilty of any negligence causing the accident, and alleges that the proximate cause of the same was the negligence of Lydia Klaus, the plaintiff, in conjunction with that of defendant Wrightsman, that the plaintiff and other occupants of the Chevrolet were pursuing a common purpose and had joint control of said automobile with the driver thereof, that the plaintiff was guilty of contributory negligence in a number of particulars not necessary to enumerate, and that said Chevrolet was being driven in violation of the official state highway rules and regulations of the department of public works formulated and published by legislative authority. Plaintiff filed a general denial in reply. The case was tried to a jury, and when plaintiff rested defendant moved for a directed verdict, but withdrew his motion with leave to renew it at the end of all the testimony, which was done. The motion was overruled, the case submitted to the jury, which returned a verdict for the plaintiff for $12,148, from which $2,148 was remitted by order of the district judge, and judgment rendered for $10,000 against both defendants. Motion of defendant company for a new trial was overruled and appeal

taken to this court. Defendant Wrightsman has not appealed. As the case now stands, Lydia Klaus will be referred to as the plaintiff, and Soloman Valley Stage Lines Company as defendant or the company, the vehicles as the car or the bus.

The following facts are not in dispute: The highway in question runs from west to east to the city of Lincoln and is paved with concrete slabs, and is 22 feet in width; the barbecue tavern is located about a mile west of the city limits of Lincoln, upon the highway, and 32 feet south of the south edge of the pavement; a graveled driveway extends from the pavement south into a parking space connected with the tavern on the east. Defendant Wrightsman was the owner and driver of the Chevrolet at the time of the accident, at which time the car was occupied by five other persons, guests of Wrightsman, two of whom, Combs and Oden, together with Wrightsman, were residents of Beatrice, Nebraska, the three others being young ladies living in Lincoln. The places occupied by these six persons in the Chevrolet were: Wrightsman at the wheel, Helen Vavra in the center and Harold Combs on the right with Olga Munsterman sitting on his lap, the four being in the front seat; plaintiff, Lydia Klaus, sat on the left and Oden on the right in the rumble seat. The Chevrolet was 13 feet 5 inches in length from bumper to bumper, the bus 25 feet; the collision occurred about 8:30 or 8:45 p. m., on October 1, 1933; the night was dark and the headlights on both cars were lighted. The tavern was 40 feet wide east and west and the Chicago, Burlington & Quincy Railroad tracks crossed the highway diagonally in a northeasterly direction at a point 153 feet west of the west line of the tavern or 193 feet west of the east line of the tavern. The parties in the Chevrolet were on their way to a dance hall some distance farther out, and stopped at the tavern where all, except plaintiff, were served with beer, and about 8:45 p. m., with Wrightsman driving and the others seated as above stated, started for the dance hall, emerging from the driveway at a speed of about five miles an hour until the front wheels

were upon the pavement, when the driver speeded up attempting to cross in front of the bus, when the collision occurred at a point on the pavement, the location of which is somewhat in dispute, and as a result plaintiff was thrown out of the car and received very serious injuries, and Oden was also thrown out and injured; in fact, all the occupants of the car were injured more or less except Miss Munsterman. The driver of the bus, Harold Hodges, was the servant of the defendant company, and the bus contained but one passenger, Robert V. Vaupel, who was seated on the front cross-seat with the driver by an open window. That by the rules of the road as adopted and published by the department of public works of the state of Nebraska under legislative authority it is provided: "3. Right of way. * * * A vehicle entering a public highway from a private road or drive must yield the right of way to vehicles on the highway."

The only witnesses to the accident were the six occupants of the Chevrolet and the two occupants of the bus, all of whom were called as witnesses, Wrightsman, Oden and Combs testifying by deposition.

The principal error assigned for reversal is that the verdict is not supported by sufficient evidence, and that the court erred in overruling defendant's motion for a directed verdict, and it will be necessary to set forth in some detail the testimony of the witnesses as to the manner in which the accident happened, particularly those matters as to which there is some dispute.

Wrightsman, called for the plaintiff, testified that, after he got to the street and just before he reached the pavement, he looked in both directions and saw no car coming either way, and drove out onto the street intending to go west, when he saw the bus was close, so just drove on straight across, saying: "I just stepped on the gas and went across, and the bus driver turned and pulled out to his left and struck us over at the north edge of the pavement." He could not give the number of feet the bus was from him when he first saw it, but says it was one and a half or two

car lengths away and he was on the pavement near the center; that his car was nearly off the pavement at the time of the collision; that his back wheel was on; that the bus struck the rear center of his car but did not tip it over; that the bus stopped right against his car with its left front wheel and about half the bumper off the pavement; that he was not very clear as to the location of the cars, that his idea on the point was just a "flash;" that plaintiff was thrown 15 to 20 feet off the pavement onto the ground; that he looked up the road when his car was 10 feet from the pavement and could see 75 feet, but did not know why he did not see the bus; that at the time there were one or two cars parked in front of the tavern, their rear ends being 12 to 15 feet from the pavement.

Witness Oden, called for the plaintiff, testified that there was one sedan parked in front of the tavern, that the Chevrolet on coming out angled a little to the northwest, that he first saw the bus as the car was just on the pavement, partly on and partly off, about 50 feet away, that when we saw we were going to get hit the car speeded up and got across all right and the crash came, that the bus angled sharply when about 10 feet away, that when hit 3 of the bus wheels were on the right side, but he changed this statement and said that 3 were on the north side of the black line; that the Chevrolet did not stop but changed to second gear before it reached the pavement; that when the cars stopped they were touching each other, the left front wheel of the bus was just barely on or off the pavement, I was thrown from the car, the Klaus girl was to the rear of the car about 10 feet away on the dirt, car headed practically west after the accident and bus about parallel.

Harold Combs, called for the plaintiff, testified that they drove out 6 or 7 feet from the east line of the building, later making it 10 or 15 feet, that there was one car parked in front when they came out, that the car did not stop but slowed down and was all on the pavement when witness first saw the bus 50 feet away, that the car went 10 feet after he saw the bus which was coming straight and then

angled to the north, that when the collision took place the car was swung around to the edge of the pavement.

Olga Munsterman, called by plaintiff, testified that she saw the lights of the bus, did not know how far it was away but thought it was on or just over the railroad tracks, did not know distance the tracks were away, the driver speeded up and we just got across to the north side when hit, was all on the north side, part of the bus was on the north side but says she did not know; Lydia was lying on the pavement after being thrown out; the car did not stop but slowed down just as it reached the pavement, was in second gear; it was dark and I saw the bus just as our front wheels were touching the pavement, thought it was coming over the tracks but it could have been quite a little this side, the car was barely moving, under five miles an hour when started on pavement, speeded up when the car was half out on the pavement, did not continue to watch the bus, next saw it when it was 4 or 5 feet away; our car was all on the pavement when hit, front wheels may have been just off; when stopped cars were parallel, the left wheels of our car were on the pavement and the right wheels just off, one maybe on, none of the bus wheels were off the pavement; our car was headed straight north when hit and the rear end pushed around and when stopped the rear of the car and front of the bus were on a line; plaintiff was lying on the pavement, not on the dirt; no other moving cars were around.

Helen Vavra, called for plaintiff, testified that when they came to the pavement the car slowed down and she saw the lights of the bus "just as we were almost to the south edge of the pavement and our car speeded up and the accident happened;" the car speeded up after the driver saw the bus; she kept looking at the bus because it happened so quickly; bus was on the south side of the pavement when it hit the car. On redirect examination she stated she did not mean the accident happened on the south side of the pavement but on the north side; there were several cars parked in front of the tavern.

Lydia Klaus testified that she first saw the bus "as we got to the pavement" and did not see it again until the crash; thought that the bus was at the railroad track because she saw the lights blink, did not know the distance; our car was headed straight north when hit, was going slow, he stepped on the gas and was all on the pavement when hit; the bus might have been very close to our car when we came onto pavement, witness did not know.

Harold Hodges, called for the plaintiff, testified that he was driving 15 miles an hour and by the use of the foot brake could stop his bus in 25 feet, and to use all brakes, within 15 feet, that he had never experimented to determine these distances but that it was just his opinion.

Harold Hodges, called for the defendant, testified that he had been driving a bus 9 years, that on the night in question he stopped 10 feet west of the railroad track, was traveling south of the black line, that the accident happened very shortly after he had shifted into intermediate, that he first saw the Chevrolet car when the bus was approximately in front of the tavern a short distance past the center, that the car was just coming to the south edge of the pavement, front wheels on, moving at 5 miles an hour, that he sounded his horn and swerved to the left and put on his foot brakes, that he swerved away from the car because it was on his right, that the car increased its speed to 8 or 10 miles an hour, that the collision occurred practically in the center of the pavement, at which time the car was across the black line headed a little to the northwest, the front wheels being about 3 feet farther north from the line than the rear wheels were south; when collision occurred front wheels of bus were practically straddle the line headed east and a little to the north, the bus traveled about 4 feet after the collision; when the cars stopped the entire left side of the Chevrolet was on the pavement, the right front wheel off and the right rear wheel on the north edge, the car headed west; the right front wheel of the bus was on the center line, the rear wheel of the Chevrolet and front end of the bus were one foot apart when stopped, the bus did not go

past the Chevrolet. The witness then marked on exhibit 23, a plat of the location, the point where the bus was when he claims first to have seen the car, placing the front end of the bus about 15 feet west of the east line of the tavern and the front end of the car just entering upon the pavement on the east line of the tavern as extended, that the car was not over 15 feet from him, that there were 4 cars parked in front of the tavern, the rear of the nearest being 3 feet from the edge of the pavement, there were no other cars moving, that after the collision the plaintiff was lying on the pavement directly south of the car and in front of the bus a foot or two, that Wrightsman said he did not see the bus until it was right on him and he speeded up to cross in front. Witness described skid marks made by the car when struck saying they started just south of the center mark and continued to the north an arc of about 6 feet ending about 4 feet to the east of where they started.

Robert H. Davis, a policeman who arrived shortly after the accident, testified that he saw the skid marks and that they began right in the middle of the pavement and ran right to the rear of the car.

Glen Anderson, a former driver for defendant, testified to the existence of skid marks right in the center of the pavement, which started just to the south side of the black line and extended in an arc to the north where they faded out; he saw no skid marks of the bus.

Robert V. Vaupel, the passenger in the bus, called for defendant, testified that he was seated at the right side of the driver near an open window, that the bus stopped 10 feet west of the railroad tracks and the driver shifted into high as he passed the west side of the tavern, at which time witness saw the Chevrolet coming out from behind cars on the east side of the tavern at a point 6 feet from the pavement, that the car did not hesitate or stop and was going 8 or 12 miles an hour, and the bus 15 to 20 miles; that when the bus struck the car the front wheels of the car were on the north side of the line angling northwest and the rear wheels a little bit south of the line, the left front wheel of

the bus was a little over the line and the right front wheel on or a little to the right of the line, the left rear wheel on the line; that when he first saw the car it was approximately 6 feet south of the edge of the pavement; that the bus changed its course when the driver noticed the car approaching onto the slab, which was nearly at the center of the front of the inn about 20 feet west of the point of impact; that as the car approached the slab it started at an angle to the northwest and turned to the north, its speed was increased as it reached the pavement, the driver of the car was looking at the occupants and first looked our way as he was just coming onto the south side of the pavement, his front wheels were on the pavement; the bus skidded the roadster around in an arc to the north side of the pavement about 5 to 8 feet. As the bus stopped the roadster was to the side of the pavement, the right side on the dirt shoulder, and the bus stopped with its front and the rear of the car on an even line, the left wheels of the roadster were on the slab a foot or so from the edge, the bus traveled approximately 5 feet after the collision, plaintiff was lying on the pavement to the rear of the Chevrolet and about 3 to 5 feet in front of the bus; that he noticed the skid marks of the car and they started on the black line or a little bit to the south; there were from 3 to 5 cars parked in front of the stand. Witness testified that he lived in New Cambria, Kansas, and was employed by the construction quartermaster of the U. S. army at Fort Riley, Kansas, and had no connection with the stage lines.

The above is a brief résumé of all the material testimony offered in the case relative to the happening of the accident. There was a great deal of testimony received as to the nature and extent of plaintiff's injuries, but in view of our conclusion later to be announced it is not necessary to enter upon that branch of the case. The question for our determination is whether or not the evidence is sufficient to sustain a finding by the jury that defendant was guilty of negligence proximately causing plaintiff's injuries. We will discuss the charges of negligence as set forth in ap-

pellee's brief following the allegations of the petition:

1. That defendant's driver was negligent in not slowing his speed. This involves a consideration of the duties which a driver upon a public highway owes to persons entering upon such highway from a private driveway. Generally speaking they are: To drive at a reasonable rate of speed, to keep a proper lookout, and to avoid a collision if it can be done by the exercise of ordinary care. Plaintiff offered no evidence as to the rate of speed at which the bus was traveling except from such proper inferences as may be drawn from the distance the bus traveled after its driver saw or should have seen the car in which plaintiff was riding entering upon the highway, and the effect of the collision upon the cars respectively. Assuming that the bus traveled 45 feet after seeing the Chevrolet, the latter was not turned over, but the rear end merely slid around about 6 feet and the bus stopped within 4 or 5 feet. There is nothing here to indicate a rate of speed greater than testified to by defendant's witnesses. Two of plaintiff's witnesses place the bus at or about the railroad tracks, a point about 193 feet west of the point of collision, at the time the car was approaching the southern edge of the pavement. The physical facts disclosed by the evidence show the absolute impossibility of these estimates being correct; if the bus was at the railroad tracks at the time the car reached the pavement, in order for them to collide the bus must have traveled at the rate of 85 miles an hour, which is not in accordance with ordinary experience, and the proposition finds no support in the evidence; in fact, the plaintiff does not now claim that the driver of the bus should have seen the car entering upon the pavement at a greater distance than 40 or 45 feet, which is the greatest distance finding any support whatever in the evidence. Assuming then that the driver of the bus, while traveling at 15 to 20 miles an hour, should have seen the car at a distance of 45 feet, what was he charged with observing? The car was approaching the highway from a private driveway at about 5 miles an hour and, according to some

of plaintiff's witnesses, slowing down as it reached the pavement. From these facts the driver of the bus might reasonably conclude, the bus having the right of way, that the driver of the car would stop and not enter upon the highway in front of the bus which was in plain sight, but would stop and yield the right of way. In *Belik v. Warsocki*, 126 Neb. 560, 253 N. W. 689, it was held: "A party driving an automobile lawfully, upon his proper side of the highway, who observes an approaching car, has a right to assume that the driver of the oncoming car will not violate the law in passing." The driver of the bus had a right to assume that the driver of the other car would comply with the law. *Kadlec v. Johnson Construction Co.*, 217 Ia. 299, 252 N. W. 103; *Arends v. DeBruyn*, 217 Ia. 529, 252 N. W. 249; *Zurn v. Whatley*, 213 Wis. 365, 251 N. W. 435. In this situation there was no duty resting upon the driver of the bus to stop or slow down until he should have become aware of the intent of the driver of the car not to yield the right of way. Upon discovering that the car was about to enter upon the highway, the driver of the bus sounded his horn, turned his bus to the left and applied his brakes, and if the driver of the car had stopped, as it seems to us it was his clear duty to do, the bus would have passed in safety to the north of the car. Although the driver of the car testified that as he approached the pavement he looked in either direction and saw no car coming, the evidence is quite conclusive that he did not look until his car was on the pavement in front of the bus, when he turned it directly north and speeded up in a vain effort to avoid the collision which it was impossible at that time for the driver of the bus to prevent.

2. In not continuing to drive on the south half of the highway where he belonged. This amounts to a charge that the driver of the bus was negligent in turning his car to the left. On this point it is pertinent to consider the common experience of mankind in driving automobiles when confronted with similar conditions. In driving upon a street or highway where cars are parked at right angles to the

curb it is a daily and even hourly occurrence that one of the parked cars is backed out or starts to back out into the highway, and the first response to such condition entering the mind of the driver on the highway is to turn his car to the left giving the parked car more room if he continues backing without making the proper observation of the on-coming car. This is what the defendant's driver did when he saw the car approaching the highway at a slow rate of speed, and it is probable that, if the other driver had not speeded up his car, the bus driver would have passed in safety as the result of his turning to the left. By the speeding up of the other car, the bus driver was faced with an emergency owing to the short distance between them, which the evidence seems clearly to indicate could only be met by the application of his brakes in an effort to stop the bus. In this connection we call attention to the claim that the collision took place on the north side of the highway, and two witnesses so testified—one of them, Wrightsman, admitted that he was not clear on the point and he described his recollection in that regard as simply a "flash;" the other one, Helen Vavra, first testified that the bus was on the south side of the pavement when the collision took place, but on redirect stated that she did not mean the accident happened on the south side but on the north side, and again that she did not notice on which side that it occurred. As against this the driver of the bus testified that the Chevrolet at the time of the accident was across the center line, headed directly north, the front part of the car being three feet farther north than the rear part was south, and that the front wheels of the bus straddled the center line, and this is the most favorable view that the evidence offers for plaintiff's claim, although it placed about three or four feet of the rear of the Chevrolet to the south of the center line. But the physical evidence furnished by the skid marks is absolutely convincing that the collision did not take place entirely on the north side. Two witnesses for defendant testified that the skid marks began a little south of the center line, one at the center line or a little south and one

at the center line, and the clear weight of the evidence establishes that the rear end of the Chevrolet was shoved around so that its right front wheel was just off the side of the pavement and the other three wheels still on the slab. While as heretofore stated there is some dispute as to the point where the collision took place, a consideration of all the evidence, especially with relation to the skid marks, as to which plaintiff offered 'no evidence, affords only one reasonable inference and that is that the Chevrolet was lengthwise substantially half and half across the center line and the front wheels of the bus straddling it, the right wheel on the line. This is agreeable to and substantially corroborates the evidence of defendant's witnesses as to the manner in which the accident happened. The conclusion is irresistible that, if the collision had taken place on the north side of the pavement, the Chevrolet would have been pushed clear off onto the dirt. We conclude that turning the bus to the left at the time and under the circumstances was not a negligent act, even though the left front wheel of the bus was thereby brought onto the north half of the pavement.

3. In not stopping his bus in a distance of 15 feet which by his own statement he said he could do. We have already discussed this question to some extent with reference to the duty of the bus driver, and have shown that, traveling at a reasonable rate of speed on a public highway and having the right of way over vehicles entering from a private driveway, he was not called upon to slow down or stop his bus until he should have become aware that the other vehicle was not going to comply with the law, and the evidence clearly establishes that he had no notice of such intent until the driver of the Chevrolet speeded up, at which time it clearly appears he did everything that he could to avoid the accident.

4. "In not seeing Wrightsman's car as it started onto the highway when he was a distance of 40 feet away, as the passenger did who was sitting on the same seat with him." As has been hereinbefore observed, the driver of the bus

had a right to assume that the driver of the other car would comply with the law, look for approaching cars, and yield the right of way. Even though he observed him at a distance of 40 or 50 feet, he cannot be charged with negligence, under the conditions shown, in failing to anticipate negligence upon the part of the other driver, but could rely upon the assumption stated until the contrary should have appeared. At the time he observed it, the car was just entering upon the pavement at a very slow rate of speed, and we are convinced that his failure to observe it a second or two earlier when it was six feet to the south of the pavement was not such actionable negligence as to constitute the proximate cause of the accident. The real cause of the collision was the negligence of Wrightsman in entering upon the highway without looking for approaching cars, in front of the bus when it was in plain sight and practically upon him, and which had the right of way. And while it may be that Wrightsman's negligence was not imputable to plaintiff, that fact is not material, when the act of the driver was the proximate cause of the accident, usually a question for the jury, but which, in this case, we hold was a question of law, there being no sufficient evidence upon which to base a finding of negligence on part of the defendant. Appellee relies upon the well-established rule that where the evidence is conflicting upon the material facts the verdict of the jury will not be disturbed unless clearly wrong. As we have intimated, the only material matters upon which there may be said a conflict exists are: (1) The location of the bus at the time or 6 feet before the car reached the pavement, two of plaintiff's witnesses placing it at or about the railway tracks 193 feet away and two 50 feet away, while Wrightsman did not see the bus until it was right upon him, at which time his car was entirely upon the pavement. Defendant's witness Vaupel said the car was 6 feet from the pavement when he saw it, the bus being 40 feet west, and Hodges that the front wheels of the car were just on the pavement when he was 15 or 20 feet away. The most favorable view for plaintiff would place the distance at 40

or 50 feet. It is argued that, as the driver of the bus said he could stop it in 15 feet by the use of both brakes, he was negligent in not doing so. But the driver did not say he could have stopped in 15 feet under the circumstances confronting him. He had about two seconds in which to make up his mind and act; he did three things—sounded his horn, turned to the left and applied his foot brake, which undoubtedly would have prevented the accident had not the driver of the other car speeded up instead of stopping as was his duty. We are clearly of opinion that all reasonable men would conclude that the driver of the bus did everything he possibly could under the conditions to avoid the collision, the situation not being one brought about by any negligence on his part. (2) That defendant was driving on the wrong side of the street. We have shown that the failure of Wrightsman to yield the right of way was the occasion of the left front wheel of the bus being over the center line, and the physical facts show conclusively that the impact took place while the Chevrolet was about half way across that line. The evidence is clearly insufficient to show negligence on the part of defendant on this point.

It is further urged that defendant could have turned to the right and passed to the rear, but this is pure conjecture. The natural thing to do was to turn to the left when the driver of the bus observed the car just entering upon the pavement, and had the latter not speeded up there would have been no accident. Having taken a reasonable course in turning to the left, there was not time to change to the right. To have turned to the right or kept straight on, the driver of the bus would be required to assume that Wrightsman would not comply with the law, whereas the presumption is to the contrary.

Plaintiff on this point cites *Cupples Mercantile Co. v. Bow,* 32 Idaho, 774, 189 Pac. 48, but in that case defendant violated the law of the road in attempting to pass plaintiff on the left as they approached each other; there seems to have been no question of emergency, and in acting as he did plaintiff assumed the defendant would continue upon

the wrong side of the road. In the present case defendant breached no law of the road in turning to the left, as that side was clear and defendant had a right to assume the other driver would obey the law and yield the right of way. At the time defendant's driver saw or should have seen the other car, just entering upon, or 6 feet south of the pavement, at such a slow rate of speed that it could be stopped instantly, the evidence discloses no fact which would indicate to the bus driver that Wrightsman would attempt to cross in front of the bus until it was too late to change his course to the right. In the Idaho case judgment for plaintiff was reversed on the ground that he violated the law of the road in turning to the left while passing a car coming in the opposite direction. The case makes rather for the defendant than plaintiff. Also, *Griffen v. Lincoln Traction Co.*, 118 Neb. 459, 225 N. W. 232. In that case defendant was a common carrier and plaintiff a passenger. As the driver approached within about 30 or 40 feet of the intersection of Twenty-fourth street, driving on the south side of R street, an automobile on his right reached the intersection and cut the corner to the left. The driver of the bus first turned to the right and then immediately to the left causing the bus to swerve violently and throw plaintiff to the floor. The bus passed in front of the car to near the northwest corner of the intersection, the car passing to its rear. There was no collision. The car on the right of the bus had the right of way. It was conclusively shown that there was a "zone of perfect safety" on the south side of "R" street which the bus could have occupied, and it was held that the driver was unjustified in turning to the left, contrary to the law of the road, and that the evidence was sufficient to sustain the verdict for plaintiff. The case is not controlling here for the reason that in the instant case the bus had the right of way, and because of the different rule of care required of defendant as a common carrier. And it appeared in that case that at all times there was a clear space for the bus to pass to the right. If there had been a collision in that case, an entirely different question

would have been presented as between the bus and the car in an action for damages by either party. While the rule requiring a driver to keep to the right is referred to in the opinion, that rule is not mentioned in the syllabus prepared by the court, and the real basis upon which the decision rests is the special care required of a common carrier in protecting its passengers while being transported, and the existence of a clear zone of safety where the bus could have been driven.

We think the verdict is not supported by sufficient evidence and is clearly wrong, and that the learned district court erred in overruling defendant's motion for a directed verdict. In view of our conclusion, the other errors alleged need not be discussed; and it appearing satisfactorily to us that another trial would be of no benefit to the plaintiff, the judgment of the district court is reversed and case dismissed as to defendant Soloman Valley Stage Lines Company.

REVERSED AND DISMISSED.