CHRISTINA A. BORN, APPELLANT, V. THE ESTATE OF ADOLPH MATZNER, DECEASED, APPELLEE.

65 N. W. 2d 593

Filed July 23, 1954.    No. 33567.

*Hotz & Hotz, Robert M. Kane,* and *J. Howard Davis,* for appellant.

*Joseph H. McGroarty* and *Begley & Peck,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This litigation originated with the filing by appellant of a claim in proceedings for the administration of the estate of Adolph Matzner, deceased, pending in the county court of Cass County. The basis of it was damages ap-

pellant claimed she sustained because of injuries inflicted upon her by gross negligence of the deceased in the operation of a motor vehicle owned and driven by him in which appellant was a passenger. The administrator of the estate contested the validity of it. An appeal was taken from the disposition made of the claim in that court to the district court. The motion of the representative of the estate of the deceased for an instructed verdict in favor of the estate when appellant had completed the proof made as her case-in-chief was sustained by the district court. The claim was disallowed and the proceedings dismissed. The motion of appellant for a new trial was denied. This appeal attacks the validity of the judgment and the denial of the application for a new trial.

The accident in which appellant was injured occurred October 8, 1952. She was an occupant of a Buick automobile owned and operated by Adolph Matzner, deceased, hereafter referred to as the deceased. It is necessary to the decision of the case to determine whether appellant had at the time of the accident the status of guest by invitation and not for hire or whether she was at that time being transported as a passenger "giving compensation therefor." § 39-740, R. R. S. 1943. The proof from which this must be concluded is without conflict. It was produced by appellant and she is entitled to have it and any deducible inferences therefrom considered most favorably to her. Paxton v. Nichols, 157 Neb. 152, 59 N. W. 2d 184.

The Women's Guild of St. Paul's Evangelical and Reformed Church of Plattsmouth is an organization authorized by the church. It is known as a local women's guild and is designated herein as the guild. The general or synodical women's guild has its headquarters at Dayton, Ohio. Membership in the church qualifies any woman for membership in the guild, but membership in the church is not required to make a woman eligible to become a member of the guild without regard to her

religious faith. It elects its officers, collects monthly dues from its members, selects its projects, and controls and disposes of funds received or earned by or contributed to it. It has substantial self-determination of its affairs and activities. In any event it is definitely distinguishable from the church. The objectives of the guild are not limited to the advancement of the religious endeavors of the church. It participates in local, civic, and community projects. Its endeavors are religious, charitable, and civic. They concern substantially all phases of these. The beneficiaries of these are not only the church or its congregation but persons everywhere regardless of belief or race. The social service project of the guild is charitable in character as local, national, and world-wide in its intended scope. Appellant, a member of the church and the guild, was interested in this area of the regional meeting, hereafter referred to, and it was for an exploration of this field of guild work that was the occasion of her transportation by the deceased at the time of the accident.

The deceased had been pastor of the St. Paul's Evangelical and Reformed Church of Plattsmouth for about 2 years before the events important to this case. He had during that time on various occasions used his automobile to transport women of his congregation to church meetings, church picnics, meetings of the guild, and to other activities. He received no pay for this.

The president of the guild of the Plattsmouth church was given notice of a regional meeting at Goehner on October 8, 1952. Its purpose was to familiarize department heads of the guild with activities sponsored by the general organization. Social service was to be discussed and studied at the regional meeting. The guild project in this department concerned the packaging and forwarding of clothes, food, and necessaries to less fortunate persons in all parts of the world. The head of each of the departments of the guild was expected to attend the regional meeting. They were unable to do so. The

president of the Plattsmouth guild secured four members to represent it. Appellant was authorized to act as the head of the social service department. Each of the other three women secured was asked to attend on behalf of a separate department. The deceased volunteered to use his automobile and take the four ladies referred to above to the regional meeting. The final arrangement was made with him by the president of the guild. She told the four women of this and when and from where in Plattsmouth they were to commence the trip. The women approved and accepted the arrangements for their conveyance to and from the meeting as made by the president. The deceased and the four women left Plattsmouth about 7:30 a. m. and proceeded to near the east part of Lincoln before the accident took place which is involved in this litigation. The deceased was not to be paid any amount for the trip. His offer to take the women to and return them from the meeting was unconditional.

The deceased was not a member of the guild and was not obligated to attend the meeting at Goehner or to furnish conveyance for anyone incidental to the meeting. He did attend some regional meetings of the guild. He did not attend all of them nor did the pastors of other churches of this denomination within the area of the region. The regional meeting was for the area of western Iowa and eastern Nebraska. There were 15 or more churches therein but not to exceed 6 pastors from the region attended. One was there to perform a special assignment. It is suggested, but not definitely shown, that some of the other pastors were there to deliver lectures to members of the guild. The evidence does not show nor does it make possible an inference that the deceased had been assigned or that he intended to have any part in the proceedings or activities of the regional meeting except as a gratuitous listener and observer. A conclusion that the deceased was obligated or that it was his duty as pastor of the church to trans-

port the members of the guild to and from the regional meeting is not justified. The record conduces to show that he donated his car and his operation of it as a gratuity through kindness and a desire to be helpful when other expected means of transportation for the women to and from the meeting failed. The record is barren of any basis for a finding that the deceased expected to receive or that he could have received from appellant or anyone else tangible and substantial benefit because of the conveyance of appellant on this occasion.

The relevant portion of the statute says that a guest is a person who accepts a ride in a motor vehicle without compensation therefor. § 39-740, R. R. S. 1943. Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451, interpreted this as follows: "The phrase 'without giving compensation therefor' * * * indicates an intention not to limit compensation to persons specifically paying for transportation in cash or equivalent, or to require that it pass exclusively from the passenger to the driver. * * * A person riding in a motor vehicle is a guest if his carriage confers only a benefit upon himself and no benefit upon the owner or operator except such as is incidental to hospitality, social relations, companionship, or the like, as a mere gratuity. However, if his carriage contributes such tangible and substantial benefits as to promote the mutual interests of both the passenger and the owner or operator, or is primarily for the attainment of some tangible and substantial objective or business purpose of the owner or operator, he is not a guest." See, also, Paxton v. Nichols, *supra.*

The repetitious assertions of appellant that the status of deceased as pastor of the church made it obligatory for him to attend the regional meeting of the guild and to transport the members of the guild who were riders in his car at the time of the accident and the claim of appellant that she was making the trip solely for the benefit of the minister of the church may not be ac-

cepted. The record compels a contrary conclusion. It is shown without dispute that the four women were riding in the car of the deceased only because of the incidence of intervention of a fact that gave the son of the president of the guild paramount claim to her companionship, counsel, and assistance at Omaha at the time of the regional meeting, and except for that they would have by an arrangement previously and definitely made been conveyed to and from the regional meeting by the president of the guild in her automobile. Appellant was a long-time member of the church. She was for many years a member and president of the Ladies' Auxiliary, an organization authorized by the church and a predecessor of the guild. She became a member of it when it was formed about 14 years before the meeting at Goehner. She had been for many years active in its work. She accepted her selection as substitute for the chairman of the social service department. She was on the journey to Goehner for the obvious purpose of doing and receiving what the chairman of that department would have done and received if she had not been compelled to remain at her home because of her obligation to her small child. The motive that put appellant on the journey to the regional meeting was to obtain instruction, information, advice, and inspiration concerning the guild, its activities, and affairs. She was not a member of or active in the guild for the benefit of the pastor of the church any more than she attended church services on Sunday solely for the benefit of the preacher. She was making the trip because she wanted to be kind and helpful to others and thereby help herself. It was performance of a part of the pattern of life she had adopted. The record contains not a suggestion that she was to make the trip to compensate the deceased for her transportation. The purpose to be served by her attending the meeting and any compensation for her conveyance to and from it were wholly detached and foreign subjects. The latter was

neither proposed to nor remotely considered by appellant. She testified that she was on the trip because she had accepted the obligation to be there in place of the chairman of the department. Any benefit the deceased expected to derive from the trip and the carriage of appellant was remote, vague, and speculative. It was incidental to hospitality, social relations, and the like. It did not result from a definite relationship, was not a definite tangible or substantial benefit to him, and it was not the motivating influence for his furnishing the transportation.

Henry v. Henson (Tex. Civ. App.), 174 S. W. 2d 270, concerned an accident while plaintiff and defendant were traveling to a church society convention in the automobile of defendant resulting in injuries to plaintiff and there was no showing that defendant furnished the transportation in consideration of anything to be performed by the plaintiff. The court said: "Mrs. Henry and Mrs. Henson, the record shows, were friends and co-workers in the Women's Missionary Society of the Methodist Church. It is undisputed that each gave a great deal of her time and talents to that work. They were engaged in advancing missionary work, which is a necessary function of that great religious institution, the Methodist Church. These ladies were devoting much of their time to the spiritual uplift of their community through the channel of their society. Their work was for the church, and the benefit accruing to them was the advancement of the Christian religion through their joint efforts as delegates to this conference and the Christian education there received by each of them. But we are unable to say from the facts in this record that such mutual benefit accruing to each of them, or that the benefit to be derived from the trip by Mrs. Henry, the transporter, was of such nature 'as to change the status of plaintiff (appellee) from that of a guest.' "

In Burt v. Lochausen, 151 Tex. 289, 249 S. W. 2d

194, it is said: "We agree with the unanimous opinion of the Court of Civil Appeals, that Burt was the guest of Lochausen on the occasion in question, and was not a mere passenger in Lochausen's car, as is expressed by the court's majority opinion, as follows [244 S. W. 2d 917]: 'The rule established by the authorities everywhere seems to be, to remove a case from the provisions of such statutes a definite relationship must be established and a definite tangible benefit to the operator shown to have been the motivating influence for furnishing the transportation. * * *' "

In Klatka v. Barker, 124 Colo. 588, 239 P. 2d 607, the court said: "In an action for damages resulting from the death of plaintiffs' son in an automobile accident, it is held that, 'The benefit conferred on the owner or operator of the car must be sufficiently real, tangible and substantial to serve as an inducing cause for the transportation.' * * *"

The declaration of the meaning of the California vehicle code which defines a guest as a party who accepts a ride in a motor vehicle "without giving compensation for such ride" by the courts of that state was mentioned approvingly by this court in Van Auker v. Steckley's Hybrid Seed Corn Co., *supra*, and reference was made to Whitechat v. Guyette, 19 Cal. 2d 428, 122 P. 2d 47, in which it is said: "Where the owner of an automobile and the other occupants thereof are members of the Young Men's Institute making a trip to attend a meeting of the organization and the occupants other than the owner were officers intending to attend a business meeting, the relationship between such occupants and the car owner, aside from any promised money payment, is merely one of a social nature, and the benefit received by the owner is not compensation within the meaning of Veh. Code, § 403."

See, also, Brandis v. Goldanski, 117 Cal. App. 2d 42, 255 P. 2d 36; Druzanich v. Criley, 19 Cal. 2d 439, 122 P. 2d 53; Scotvold v. Scotvold, 68 S. D. 53, 298 N. W.

266; Master v. Horowitz, 237 App. Div. 237, 261 N. Y. S. 722, affirmed in 262 N. Y. 609, 188 N. E. 86; Rauch v. Stecklein, 142 Or. 286, 20 P. 2d 387; 4 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), § 2292, p. 317; 60 C. J. S., Motor Vehicles, § 399, p. 1014.

A benefit removing an occupant riding in the motor vehicle of another from the provisions of the guest statute must be a tangible and substantial one to the owner and a motivating influence for his furnishing the transportation. A remote, vague, incidental, or speculative benefit is not sufficient to have that effect. This is the basis of the rule that the sharing of the cost of operating the car or other expenses of the trip, when the acceptance of the occupant for conveyance is not motivated by or conditioned on such contribution, is incidental, an exchange of social amenities, and does not transform the occupant into a passenger for compensation. See, Brody v. Harris, 308 Mich. 234, 13 N. W. 2d 273, 155 A. L. R. 573; McCann v. Hoffman, 9 Cal. 2d 279, 70 P. 2d 909; Brandis v. Goldanski, *supra;* Barnard v. Heather, 135 Neb. 513, 282 N. W. 534; Master v. Horowitz, *supra;* Riggs v. Roberts, 74 Idaho 473, 264 P. 2d 698; Annotation, 155 A. L. R. 575; 60 C. J. S., Motor Vehicles, § 399, p. 1015.

The transportation furnished by deceased did not promote or benefit any mutual interest or business of the host and the guest. The deceased and the guild members each had a different purpose for attending the regional meeting. The former gratuitously transported the latter motivated by a desire to be kind and helpful and to encourage the work of the guild. The presence of the deceased at the meeting was not necessary for or contributory to appellant deriving full benefit from it. The deceased had no part or voice in the program. There was no mutual interest of deceased and appellant that could have been served by their joint presence at the meeting. Druzanich v. Criley, *supra,* was an action by the occupant against the operator for damages for

personal injuries occasioned by an automobile accident. The parties were delegates to a conference of a labor union. The owner of the car was operating it as the parties traveled to the place of the conference. There was an accident and plaintiff was injured. He claimed he was a passenger and not a guest because the parties were engaged in a business venture for their mutual advantage and traveling in contemplation of their mutual business. The court rejected this claim by this language: "It is true that both parties desired or, as delegates, were required to attend the conference. It is also true that each would be benefited by individual attendance. However, the attendance of one was not necessary for the enjoyment of the benefits of attendance by the other. This being so, it becomes immaterial whether the conference was of a business or social nature. * * * In the instant case either the appellant or respondent Dorothy Criley could have enjoyed the benefits of the conference without the presence of the other. The fact that the parties were both interested in the general objective of the trip, viz., the attending of the conference, is not the controlling factor."

It is emphasized by appellant that she did not request conveyance by deceased; that she was not invited to ride in his car; and that she made no arrangement for the trip to Goehner with the deceased. This is not significant in the determination of the issue as to the status of appellant at the time of the accident. She accepted the arrangement made for her transportation and deceased concurred therein. Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315. Appellant was at the time of the accident a guest in the motor vehicle of the deceased without compensation.

It is necessary to decide if the action of the trial court. in determining as a matter of law that the evidence on the issue of gross negligence was insufficient to support a finding of the jury in favor of appellant was justified. The proof on this issue is without substantial conflict.

The deceased was the owner of a Buick automobile. He operated it at all times important to this litigation. He accepted appellant and three other women, members of the guild, as occupants of his car for a trip to Goehner to attend the regional meeting. They left Plattsmouth about 7:30 a. m., proceeded to Union on U. S. Highway No. 75, and west on U. S. Highway No. 34 toward Lincoln. Appellant was seated on the left side of the rear seat directly behind the driver. Emma Egenberger, one of the other women, occupied the front seat with the deceased and sat to his right. It was a clear, dry, pleasant morning. U. S. Highway No. 34 had a hard surface, was in good condition, dry, and clear. The paved portion of it as it approached and at the place of the accident was 30 feet wide. That portion of the highway was substantially level and without obstruction to view in any direction by a traveler thereon. The highway as it proceeded westward toward Lincoln intersected Cotner Boulevard. The paved portion of the boulevard was 30 feet wide. There was a yellow and black highway stop sign near the north edge of the pavement on U. S. Highway No. 34, 83 feet east of the center of Cotner Boulevard. U. S. Highway No. 34 continued west on O Street from the west side of Cotner Boulevard. The pavement on O Street was 30 feet from curb to curb. There was a power-line pole not more than a foot south of the south curb of O Street and 82.5 feet west of the center line of Cotner Boulevard. The intersection of U. S. Highway No. 34 and Cotner Boulevard was enlarged because of curves in the outer lines of the pavement at the intersection, and the entire intersection was paved.

There were two automobiles near each other traveling west near the north edge of the pavement on U. S. Highway No. 34 near the stop sign and as the car of the deceased approached them from the rear their speed was decreased and they came to a stop with an intervening space between them of about 3 feet. The front of the first of these was about in line with the stop sign.

Deceased turned his car to the left and was in the act of passing the two cars when they came to a stop. He passed them, entered, and crossed the intersection. The left front corner of his car went over the curb and struck the power-line pole described above. The record does not disclose any reason for the car of the deceased getting off the pavement to the south the short distance required for the left front corner to contact the pole. There was no traffic of any kind in or within sight of the intersection as the deceased was near or was passing through it except the two cars that were stopped east of the intersection. The speed of the car of the deceased as it came to and entered the intersection was estimated at from 50 to 55 miles an hour. There is no proof that deceased had been over the highway or intersection at any time previous or that he knew or saw the stop sign. Emma Egenberger, who sat to the right of the deceased in the front seat of the car, was asked if she saw the stop sign as she came down the road and her answer was "Well, we were behind the cars; we were behind those two cars." She said she knew the road and she knew that there was a stop sign east of the intersection to be observed by west-bound traffic. She was alert to how the deceased was operating the car but she made no effort to advise him of the stop sign until his car was three car lengths east of the east curb line of Cotner Boulevard. It was then a considerable distance west of the stop sign. She claims that at that place she said not in a scream or a loud voice " 'There's a stopsign coming up.' I said it very nicely." The car was then in the intersection and she said " 'Stop.' " This was all in a split second and in another split second the accident happened. She claims that about 15 miles east of the place of the accident she said to the deceased " 'We don't have to drive so rapidly' " and he said they did to be in Goehner by 9 o'clock. This is not supported by any other occupant of the car and the appellant said she heard no such a statement. There is no evidence of

the speed of the car at that time or that it was unusual or improper. The registration for the meeting commenced at 9 a. m., but the program did not open until 10 a. m. Appellant had ridden with the deceased in his car when he was operating it at different times during the 2 years he had been pastor of the church at Plattsmouth. It is not claimed that he was inexperienced, unskillful, or disposed to improper operation of his car. Appellant had an opportunity to know the manner in which he operated his car. She said he was very gracious about the use of it. She rode with him to attend different types of meetings and gatherings. The trip preceding the accident was uneventful. Appellant had no reason to complain or to have anxiety for her safety. She testified "I thought everything was going all right, to my knowledge, yes."

In her petition appellant in substance specified as gross negligence of deceased excessive speed, failure to observe the stop sign on the north of U. S. Highway No. 34 and east of the intersection, driving his automobile on the center of the highway, passing two vehicles which were stopped or were slowing down for the stop sign, driving into and through the intersection traveling toward the west, and failing to have under control the vehicle and permitting it to contact the pole. The case in this regard is somewhat limited by the statement of appellant on the submission in this court that she had established that the cause of the accident was excessive speed, failure to observe the stop sign when deceased was asked to do so, and crossing the intersection on the left side thereof without stopping before entering upon it.

The day was clear and the condition of the road was excellent. There was no traffic except the car of deceased and two vehicles preceding him. The regulation of speed was the appropriate statute fixing a 60 mile an hour maximum. There was no violation of the law as to speed. The paved portion of the road was 30 feet.

wide, wider than the average 2-lane highway. The cars preceding deceased were near the north edge of the pavement and there was ample space to pass them on the left. The cars were decreasing their speed. The speed of deceased was not unusual or abnormal under the circumstances considering it is not shown that he had been over the road before or had knowledge of the stop sign and that the cars in front of him were between him and the stop sign. He passed the two cars east of the intersection. It is common knowledge and experience that speed equal to that of deceased is indulged and maintained by ordinarily prudent drivers passing vehicles on the open highway in the absence of other traffic except the car or cars being passed. In Moses v. Mitchell, 139 Neb. 606, 298 N. W. 338, the court said: "The day was clear and visibility was good. Certainly, a speed of 55 miles an hour on a state highway in open country on a clear day is not of itself negligence." The speed was not under the circumstances sufficient to make a reasonably prudent driver conscious of the particular peril, whatever it was, which is unknown, that caused the accident. If he had passed these cars at the speed he was moving a greater distance east of the intersection it probably would not have been contended that his speed could have been expected to cause the car to go out of control and that he would have been thereby charged with the realization of the imminence of probable peril. The fact that the cars overtaken were slowing for a stop sign, the existence of which he did not know, rather than for other reasons cannot make the passing speed of deceased excessive or gross negligence. It may be conceded that there are many elements that enter into a determination of whether or not speed at the rate deceased was driving is under the circumstances excessive, but the mere fact that an obscured stop sign had not been seen and observed is not, in view of the situation presented by this record, of significance. There is no causal connection in this case between the default of defend-

ant in not observing the traffic regulation and the fact that the vehicle got out of control.

All the record shows in reference to the position of the car of the deceased upon the highway at the time of passing the two cars and thereafter until immediately before the accident is that the two cars he passed were well to the north side of the road and deceased passed to the south of them. Appellant pleaded that deceased traveled in the center of the highway as he passed and continued west. The record furnishes no information of any act or omission of deceased from the time he passed the cars until the accident except he did not stop before entering the intersection and the estimated speed of his car. The record is barren of fact or inference as to any cause for the car of deceased going out of control. Any attempt to decide this must rest on speculation. There could not have been consciousness of impending peril or warning of conduct indicating lack of regard for the safety of the guests because there was no scream, exclamation, or show of emotion of anyone before the collision. Emma Egenberger said that she did not scream; that she did not use a loud voice; but that when she spoke she did so "* * * very nicely." In Cronin v. Swett, 157 Neb. 662, 61 N. W. 2d 219, an automobile owned by defendant in which plaintiff was riding as a guest traveling at a speed of about 50 miles an hour on a curve left the road, traveled across the shoulder, down a 3-foot embankment, turned over, and stopped upside down about 100 feet from the point where it left the paved surface of the highway and 50 feet west of the highway. Plaintiff was injured and sought to recover damages because of the gross negligence of the defendant. The court therein said: "While not material, in view of what we have already said, there is another serious deficiency in appellant's proof. The record does not show what caused the car to leave the highway. That appellant must do so is elementary * * *. Appellee testified the car did not skid but just shot out of the road toward

the northwest and that he was not able to control the steering thereof. * * * However, appellee further testified he did not know if he could have turned it to the right for although he supposed he made an effort to do so he could not say that he did."

The appellant places much reliance for proof of gross negligence on the fact that deceased did not see and respect the stop sign north of the highway and east of the intersection. This provokes an inquiry of what if any negligence the deceased was chargeable with because of this default, and if he was guilty of any negligence because thereof was it the proximate cause of the accident. The deceased was not aware of the stop sign. It was obscured by two cars between him and it. The passenger in the front seat was in a more favored position to see it and she testified that she could not do so. Deceased was following the two cars. They slowed down for a reason he did not know and it was a normal move that he thought he was justified in making to drive to the left sufficiently to pass them. He had no notice of the stop sign or any fact that charged him with consciousness that he was violating a traffic regulation. If he heard Emma Egenberger when his car was well past the stop sign and about three car lengths from the intersection he had for the first time information that there was a stop sign coming up. This was inaccurate because the car was then a considerable distance west of the stop sign and by the time the statement was made the car was well into the intersection. About 1 second at the estimated speed took him to the west side of Cotner Boulevard. No occupant of the car testified she heard Emma Egenberger make any statement to the deceased. Appellant testified that she did not and she was in the rear seat directly behind the driver. There is no proof that deceased heard anything his passenger said to him at that time. She states she did not speak in a loud voice. She testified that later when the car was in the intersection she said " 'Stop,' " but not in a loud voice.

In a split second thereafter the accident happened. The stop sign was 165 feet east of the pole the car struck. There was no moving traffic in, near, or approaching the intersection. The car of the deceased went out of control after it passed the other two cars, but no traffic caused or contributed to the accident. The failure to see and heed the sign was not the proximate cause of the collision of the car with the pole. It has been said by this court on many occasions that a violation of a rule of the road cannot constitute negligence unless it is the proximate cause of the accident. In Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N. W. 2d 114, it is said: "Any violation of the rules of the road back on the overpass, therefore, had no causal connection with the accident. We think this evidence is too remote to have any force in establishing negligence on the part of the operator of the oil transport." In Miller v. Abel Construction Co., 140 Neb. 482, 300 N. W. 405, it is stated: "In an action for negligence, the burden is on the plaintiff to show that there was a negligent act or omission by the defendant and that it was the proximate cause of plaintiff's injury or a cause which proximately contributed to it." To say as appellant does that if deceased had stopped at the sign the accident would not have happened is pure assumption and speculation. The car could have gone out of control between the sign and the pole. The violation of traffic regulations concerning stop signs, speed, the manner of driving on the highway, and the like, is not negligence of any kind or degree, but is only a fact to be considered with all the other evidence in deciding an issue of negligence. In Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607, it is said: "If it had been established that the appellant was of full age and discretion, and that her conduct was a violation of an ordinance or a statute, it would not have amounted to negligence as a matter of law. It would have been only a fact or circumstance to have been considered by the jury with all

the other evidence in the case. The violation of a safety regulation established by ordinance or statute is not negligence as a matter of law." See, also, Tempero v. Adams, 153 Neb. 331, 44 N. W. 2d 604; Kennedy v. Chicago, R. I & P. R. R. Co., 156 Neb. 345, 56 N. W. 2d 446; Cunning v. Knott, 157 Neb. 170, 59 N. W. 2d 180.

It is stressed by appellant that it was negligence for deceased to operate his car on the south part of the road in passing other cars and through and across the intersection. In the recent case of Paxton v. Nichols, *supra,* it was contended that the operator of a motor vehicle was negligent in driving on the north side of the highway while traveling east. The driver collided with an automobile whose rights were superior traveling west on his proper side of the road. The operator of the car going east was absolved of gross negligence. The court said: "'A traveler may ordinarily occupy and use any part of a public highway he desires when not needed by another whose rights thereto are superior to his own.'" See, also, Klaus v. Soloman Valley Stage Lines Co., 130 Neb. 325, 264 N. W. 747; Kuska v. Nichols Construction Co., 154 Neb. 580, 48 N. W. 2d 682.

The fact that the car of deceased got out of his control does not establish negligence and much less gross negligence nor does it prove the proximate cause of the accident. Negligence is not presumed and cannot be inferred from the fact that there was an accident. The burden was on appellant to prove gross negligence that was the proximate cause of the damage. This could not be done by evidence from which negligence could only be surmised or conjectured. There was a serious deficiency in the proof. It does not show what caused the car to leave the highway. Bowerman v. Greenberg, 142 Neb. 721, 7 N. W. 2d 711; In re Estate of Bingaman, 155 Neb. 24, 50 N. W. 2d 523; Cronin v. Swett, *supra.* The deceased may not have done as well as some other driver would have done to control the car when the emergency developed. This was not required of him. When ap-

pellant accepted his hospitality as operator of the car she assumed whatever risk that attended the degree of proficiency of the driver and his usual habits of driving with which she was familiar. Kelly v. Gagnon, 121 Neb. 113, 236 N. W. 160; Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041.

Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It indicates the absence of even slight care in the performance of a duty. Paxton v. Nichols, *supra.*

Appellant earnestly implores the court to reverse the trial court because of cases decided by this court in each of which gross negligence was found to exist as a matter of law. Subsequent decisions have sufficiently characterized enough of these cases to quite plainly indicate matters that should be found to justify a conclusion of gross negligence. The first four mentioned in the classification made by appellant are discussed in Thurston v. Carrigan, 127 Neb. 625, 256 N. W. 39, as follows: "In the cases of Morris v. Erskine, *supra* (124 Neb. 754), Gilbert v. Bryant, 125 Neb. 731, Swengil v. Martin, 125 Neb. 745, and Sheehy v. Abboud, 126 Neb. 554, wherein the guest was permitted a recovery, the imminence of danger was apparent to the driver and he was cautioned by the guest, but persisted in his negligent driving. The facts in each of those cases disclose that the driver was at least heedless of the consequences which might ensue by his reckless operation of the car, which involved, not only the rate of speed, but included other conditions which enhanced the peril and which were open to the driver."

Lemon v. Hoffmark, 132 Neb. 421, 272 N. W. 214, noticed several of these cases and concluded as follows: "In the case at bar the facts disclose that the existence of danger, if any, was not apparent to the driver of the car; no protests were made to her by her guests in the manner of operation of the car; there was not a continuous course of negligent driving, nor did the driver

persist in driving negligently; the driver was not heedless of the consequences nor conscious of the peril; the speed of the car was moderate. * * * Helen Hoffmark, the driver of the car, * * * was not guilty of gross negligence, as such term has been defined by this court." See, also, Gosnell v. Montgomery, 133 Neb. 871, 277 N. W. 429.

Gummere v. Mudd, 139 Neb. 370, 297 N. W. 622, was an action by the plaintiff, a guest in the automobile of the defendant, when he was injured by the car leaving the road and overturning. There was evidence that the car had been traveling at from 60 to 80 miles an hour for 8 or 9 miles. In attempting to negotiate a curve the brake was applied, the car swerved from side to side, the front wheel went into some gravel on the north side of the highway, and the car overturned at least twice. The court reviewed many of the cases referred to by appellant and in denying the existence of gross negligence said: "Authorities relied upon by plaintiff for reversal all disclose the ever present imminence of danger visible to, known by, or made known to the driver, together with a persistence in negligence apparently heedless of the consequences thereof; evidence of negligence far in excess of any appearing in the case at bar and from which different minds might reasonably draw different conclusions as to the factual question of gross negligence." This was recently quoted with approval in Paxton v. Nichols, *supra.*

Cunning v. Knott, *supra,* was based on a charge of gross negligence of defendant causing injury and damage to plaintiff, his guest, who was riding in the car of defendant. They were on a country road traveling east at an estimated speed of 60 to 80 miles an hour. The road formed a "T" with a north-south state highway. There was a stop sign a considerable distance west of the state highway and on the south side of the country road which was to some extent obscured by weeds but was visible on the road by a traveler going east a dis-

tance of 400 feet west of it and ability to see it increased as it was approached. The country road ended in a dead end at the intersection and there was a high bank east of it. The defendant did not see or observe the stop sign. When he saw the road ended with the east side of the intersection he applied the brakes of the car. It skidded 120 feet in a straight line east, hit the bank with great force, raised up on its front and dropped back on its wheels, and was completely demolished. The plaintiff was severely injured. Defendant was over the state highway on the morning of the day of the accident but he was unfamiliar with the country road. The guest gave no warning of danger and made no objection to the manner in which the car was operated. This court found against the existence of gross negligence as a matter of law and ordered judgment for the defendant. The court said: "As we weigh this evidence, under these rules, it did not rise to the degree of gross negligence and was not sufficient to submit the issue of gross negligence to the jury. * * * The judgment is reversed and the cause remanded with directions to render judgment for the defendant."

Pavlicek v. Cacak, 155 Neb. 454, 52 N. W. 2d 310, was prosecuted by the representative of John L. Pavlicek, deceased, for damages for his wrongful death claimed to have resulted because of gross negligence of defendant while the deceased was a guest in the automobile of defendant traveling north on a maintained road approaching an intersection with an east and west road on which a traveler in a Ford coach was moving west toward the intersection. Defendant had been over the road on which he and the deceased were traveling once before and he knew he was coming to an obscured intersection because the view to the east was interfered with by trees and farm buildings. He saw a slow sign about 225 feet south of the intersection but he did not decrease his speed of 50 miles an hour. When he was 40 feet south of the intersection he could see past the

trees to the east. He looked east and saw a car approaching about the same distance from the intersection as the defendant was south of it. He was unable to apply the brakes on the car but attempted to turn to the left while he was moving about 50 miles an hour and collided in the intersection with the car traveling from the east. The deceased suffered injuries which caused his death. A judgment for plaintiff was reversed by this court, and the action dismissed as to the defendant. The court said: "After a careful study of the facts, we have reached the conclusion under the guest statute the appellee did not prove facts sufficient to support a finding of gross negligence and that the motion of appellant for a judgment notwithstanding the verdict should have been sustained." See, also, Cronin v. Swett, *supra;* Montgomery v. Ross, 156 Neb. 875, 58 N. W. 2d 340; Bishop v. Schofield, 156 Neb. 830, 58 N. W. 2d 207; Munsell v. Gardner, 136 Neb. 214, 285 N. W. 555.

The record fails to show negligence of the deceased of the high degree required to constitute gross negligence. The judgment of the district court should be and it is affirmed.

AFFIRMED.