Elizabeth LaPLANTE, Plaintiff,

v.

**RADISSON HOTEL COMPANY,**
Defendant.

No. 4–68 Civ. 242.

United States District Court
D. Minnesota,
Fourth Division.

Dec. 2, 1968.

Lindquist & Vennum, by Wm. C. Mortensen, Minneapolis, Minn., for plaintiff.

Meagher, Geer, Markham & Anderson, by A. W. Nelson, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

This case involves what appears to be a novel question concerning which there is a paucity of authority. It is presently before the court on the defendant's motion for judgment notwithstanding the jury verdict for plaintiff or, in the alternative, for a new trial. Simply stated, the question is whether a jury may find a hotel negligent and an injured plaintiff free from contributory negligence where the hotel in hiring itself out to stage a banquet for 1,200 paying guests in one of its banquet rooms allegedly set the banquet tables so close to each other as to leave inadequate aisles and room between seated guests, causing plaintiff to trip over a chair when attempting to leave the room and thereby injuring herself.

On this motion, the evidence must be viewed in the light most favorable to the verdict. The jury could find that the plaintiff, a semi-retired school teacher from Kalamazoo, Michigan, 67 years of age, was a guest at defendant's hotel for the purpose of attending the national convention of a professional education sorority of which she was a member. The convention meetings and related banquets were all held at the defendant hotel.

On August 10, 1967, the convention staged its final banquet and plaintiff was in attendance. The banquet arrangements had been made some months earlier, with the accession and prior approval of a seating sketch or chart by at least some of the sorority's national officers, though not seen by plaintiff. The room in which the banquet was held is claimed by defendant to have a maximum seating capacity of 2,000 though only 1,200 were in attendance that evening.

Long tables, seating 12 to 18 persons each, were placed at pre-set distances apart which defendant claims was 42 inches though the jury could find from evidence plaintiff introduced that the actual distance between tables was somewhat less. Further, there was evidence

that at least at some of the tables, the chairs were back to back to those at the next table. The testimony of at least one witness other than the plaintiff indicated a crowded condition.

There was testimony that near the entrance to the banquet hall there was ten feet of vacant space, more or less, from which the inference could be drawn that if used such would have permitted the spacing of all the tables farther apart. Also in a certain area were a number of circular tables, seating a lesser number of persons per square foot than the long banquet tables and which if replaced by long banquet tables the jury could find would have allowed more space for all tables. The room was set up with a series of three head tables in stages and nearby a large simulated birthday cake commemorating an anniversary of the sorority.

There was testimony that waitresses were unable to move down the aisles between the long tables and at the table at which plaintiff was seated, the plates of food were passed down by the waitresses from person to person from the end of the table. The hotel manager testified this was not a good practice and he did not permit it, if discovered. Plaintiff testified she had determined by later experimentation that seated at a table in normal manner there were 18 inches between the edge of the table and the back of her chair; that on this night her chair touched that of the person at the next table backing into her; that if his or her similar distance was no more than 18 inches, this left but six inches between the backs of chairs even if, as the hotel manager stated, the edges of the tables were placed 42 inches apart.

The banquet began at 8:00 P. M. and plaintiff came to the hall and selected a seat about in the middle of one of the long tables.

Several hours later at approximately 11:15 P. M. before the banquet program was over and while the lights were dimmed, with a spotlight on the head table and/or the birthday cake, plaintiff

decided to leave the banquet hall to meet her son-in-law as prearranged. Moving sideways she negotiated a path between chairs as the various people moved in toward the table to accommodate her. The jury could find that not realizing the position of the final chair and believing she had negotiated herself to the main aisle, plaintiff caught her foot on the leg of that last chair and tripped and fell injuring herself. Based on this evidence and the medical testimony as to the extent of her injuries, the jury awarded plaintiff the sum of $3,500.

■ Defendant's first challenge is that the evidence as a matter of law is insufficient to allow a finding of negligence on the part of defendant to stand. The court believes to the contrary and that the evidence above recited is sufficient to permit the jury to come to the factual conclusion that they did, that plaintiff's injuries were the proximate result of the defendant's negligence in crowding the tables too closely.

Defendant contends that since there was no violation of any statute or ordinance pleaded nor proved, the burden was on the plaintiff to show by expert testimony or otherwise the standard of care to which defendant's conduct should have conformed. Put another way, defendant claims that there was insufficient proof of a violation of any duty since there was no evidence of what reasonably prudent hotel management would do under the same or similar circumstances and thus it was error to permit the jury to speculate as to the standard of care against which defendant's conduct should be measured.

The issue becomes one of whether a jury should be permitted without expert testimony to draw upon their own knowledge, background and common experience to determine what the standard of care should be and hence whether any departure therefrom occurred.

■ Certainly the nature of the case is not scientifically complicated nor technical. While some training and experience in catering and hotel management may be a necessary prerequisite to the handling of a banquet for 1,200 people, the court is of the view that such training or background is not a *sine qua non* to the ability to determine what is unreasonable crowding and what is not. The lay juror knowing no more than the next man about catering procedures could determine from the evidence in this case whether or not the tables were too close for safety. Though the evidence on the point is not conclusive one way or the other, the court is of the opinion that this was a fair question for the jury and not insufficient as a matter of law. The rule of evidence applied in determining the appropriateness of opinion "expert testimony" is whether the subject involved is so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman. McCormick, Evidence § 13 at p. 28 (1954). See Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Campbell v. Clark, 283 F.2d 766 (10th Cir. 1960); Cohen v. Western Hotels, Inc., 276 F.2d 26 (9th Cir. 1960); Schillie v. Atchison, Topeka & Santa Fe Ry., 222 F.2d 810, 814 (8th Cir. 1955); Farris v. Interstate Circuit, 116 F.2d 409, 412 (5th Cir. 1941). Further the trial court has great discretion in determining the need for such testimony. Joseph A. Bass Co. v. United States, 340 F.2d 842 (8th Cir. 1965). Here the court is not convinced that expert testimony was required or would necessarily have been helpful to the jury.

Defendant refers the court to the case of Hemmen v. Clark's Restaurant Enterprises, 434 P.2d 729 (Wash.1967), for the proposition that it is not a jury question under these circumstances as to the degree of care required. In the court's opinion that case is inapposite. In *Hemmen*, the chair upon which plaintiff had tripped inadvertently had been placed in her way by another patron of the restaurant and there was not enough time for the defendant to remedy the hazardous situation before the accident happened. Further in *Hemmen* the aisle

between the back of the last row of chairs and the adjoining wall was two to two and one-half feet wide while here there was believable testimony that the chairs were at some points back to back. That issues such as appear in the case at bar can and should be decided by the trier of fact is recognized in *Hemmen*. 434 P.2d at 733.

Plaintiff argues, perhaps with some merit, that if a standard is required to be established by evidence from a caterer or other expert person engaged in the industry, defendant's catering manager himself testified 42 inches to be the standard and there was evidence from plaintiff herself and from another witness that the tables were less than that distance apart and perhaps no more than 36 inches. The court, while retaining some doubt as to the accuracy of the measurement observations of these witnesses, cannot say as a matter of law that the jury could not believe and be convinced by their testimony.

█ Defendant's next claim is that the court erred in refusing to direct a verdict in defendant's favor on the issue of plaintiff's contributory negligence and assumption of risk. While there is evidence to support a favorable jury finding on either or both of those theories and the court did instruct liberally on both of them, in no way can it be said that reasonable minds could not differ on these issues. Hence a directed verdict would have been inappropriate. At the time of plaintiff's fall, the room was nearly dark, though plaintiff did testify she could see her feet. The spotlight was on the headtable and the birthday cake. The jury could find that the hotel reasonably could foresee that during a banquet commencing at 8:00 P. M. and lasting until after 11:00 P.M., a number of people would leave the hall to go to the rest rooms or for other purposes; that with a program in progress the lights might well be dimmed and vision made more difficult; and that with the crowded or overcrowded conditions such a fall as occurred might be anticipated. The question of plaintiff's contributory

negligence was a fair fact question for the jury and this court does not feel it can substitute its judgment for the jury's where there is substantial evidence upon which a finding could be based.

Another claimed error on the part of the court relates to additional instructions. Some time after the jury had retired, the foreman sent a note to the court by the United States Marshal requesting:

█ "Will the court re-define Cont.Neg.—Assumption of Risk" The court summoned both counsel and reinstructed first by repeating the previously given definition of negligence and then the previously given definitions of contributory negligence and assumption of risk. Though objection was made at the time, the court is of the opinion that no error was committed in this reinstruction. In formulating additional instructions, the definition of negligence was re-read in an effort to make clear to the jury the full meaning of the term contributory negligence. In the court's opinion this was best done by first re-explaining negligence itself. So the court stated to the jury:

"It seems to the Court that to re-define contributory negligence, it's necessary first to define negligence so that you may have that in mind in connection with the definition of contributory negligence, and so I shall proceed."

The necessity, extent and character of additional instructions are matters of discretion for the trial court. Misiewicz v. Waters, 23 Wis.2d 512, 127 N.W.2d 776, 779 (1964). See also Strobel v. Chicago, Rock Island and Pacific Ry., 255 Minn. 201, 96 N.W.2d 195, 199 (1959); Leebens v. Baker Co., 233 Minn. 119, 45 N.W.2d 791, 794 (1951); Hofrichter v. Kiewit-Condon-Cunningham, 147 Neb. 224, 22 N.W.2d 703, 708, 164 A.L.R. 1256 (1946).

█ Defendant's next claim of error is that the amount of $3,500 awarded by the jury is so excessive as not to be jus-

tified by the evidence and constitutes a verdict motivated by passion and prejudice. The medical evidence clearly was ample to sustain such a verdict and it is not excessive so as to require a new trial.

Defendant's final ground for its new trial motion asserts alleged prejudicial closing argument by plaintiff's counsel. The court found nothing so prejudicial as to require a mistrial then nor a new trial now. Assuming, *arguendo*, that some prejudicial remarks were made, they may be considered *de minimis*. In one instance, a particular statement by plaintiff's counsel concerning plaintiff's use of her savings was promptly and properly cured by appropriate admonition and cautionary instruction to the jury. See Myres v. United States, 174 F.2d 329, 338–339 (8th Cir. 1949).

A separate order has been entered denying defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial.